MOTOR SALES & SERVICE, INC., v.
GRASSELLI CHEMICAL CO. and
A. J. PETER

(December 15, 1930. Opinion and Decree.)
(January 5, 1931. Rehearing Refused.)

Michel, Provosty, Oliver P. Carriere, of New Orleans, attorneys for plaintiff, appellee.

Monroe & Lemann and Robert G. Polack, of New Orleans, attorneys for defendant Grasselli Chemical Company.

Wm. H. Talbot, of New Orleans, attorney for defendant A. J. Peter.

JANVIER, J. Defendant Grasselli Chemical Company is engaged in the sale of chemicals.

Defendant, Peter, is a public drayman, who, for some time, has, under contract, transported over the streets of New Orleans heavy drums of chemicals for the Grasselli Company.

On the day of the accident which gave rise to this suit, one of Peter's trucks was loaded with drums of sulphuric acid, which, on orders of the Grasselli Company, was being transported to a steamship wharf for shipment to a foreign port. As the truck was on its way to the steamship landing, the iron bung in one of the drums in some manner came out and large quantities of the acid shot up into the air and fell upon an automobile belonging to plaintiff which was following the truck.

The acid burned much of the paint from the automobile and practically ruined the top, the upholstery, and the linoleum forming part of the running boards, and plaintiff now seeks to recover the loss sustained as a result of the said damage. In its petition it asks for reimbursement for the amounts expended by it for repairing the car, but the evidence shows that this was never done, and this suit is therefore in effect a suit for the diminution in value which resulted from the acid burns.

From a judgment in favor of plaintiff and against the Grasselli Company; the latter has appealed, and plaintiff has also appealed devolutively from that part of the judgment which dismisses its suit against the other defendant, Peter.

No cause is assigned for the most unusual occurrence, and plaintiff contends that the doctrine of "res ipsa loquitur" relieves it of the obligation of alleging and proving the specific acts of negligence from which the accident resulted. It would seem that, so far as the Grasselli Company is concerned, the doctrine of "res ipsa loquitur" is applicable. Surely, plaintiff cannot be expected to have had knowledge as to the cause of such an occurrence as the explosion of a tank of acid on a truck in a city street. In Lykiardopoulo v. New Orleans & C. R. Light & Power Co., 127

La. 310, 53 So. 575, Ann. Cas. 1912A, 976, the Supreme Court of this state held (syllabus):

"Where a plaintiff cannot be expected to have any information as to the causes of an accident, whereas defendant must be assumed to be fully informed, and where the accident is of the kind which ordinarily does not occur when due care has been exercised, plaintiff need not allege nor prove the particular acts of omission or commission from which the accident resulted; but the accident itself makes out a prima facie case, casting on defendant the burden to show absence of negligence, and this rule is of peculiar applicability in cases of boiler explosions."

In Dotson v. Louisiana Central Lumber Co., 144 La. 78, 80 So. 205, the court held (syllabus):

"Where the cause of an accident resulting in damage is more properly within the knowledge of the defendant, the accident itself makes out a prima facie case under the doctrine of res ipsa loquitur, and the burden is upon the defendant to show the absence of negligence." See, also, Lonatro v. Palace Theatre Co., 5 La. App. 386; Noble v. Southland Lumber Co., 4 La. App. 283; Weikel v. Caddo Transfer Co., 5 La. App. 146.

That the drum of sulphuric acid, at the time of the accident, was not under the immediate control of the Grasselli Company, we believe to be unimportant, because if the cause of the accident was the inherent nature of the acid, or defect in the drum, or carelessness in the placing of the bung in the drum, none of these could have been within the knowledge either of plaintiff, or of the other defendant, Peter, and it would be only fair to require that the Grasselli Company absolve itself from negligence, which must be presumed in this case from the mere happening of the accident.

Many authorities have so firmly imbedded into our jurisprudence the doctrine that an injured plaintiff need not allege or prove the precise cause of the accident, when, under the circumstances, he could have had little if any information with regard thereto, whereas the defendant should have been fully informed on the subject, that it is unnecessary for us to discuss further the applicability of the doctrine so far as the Grasselli Company is concerned.

The case as against Peter is different. He, like plaintiff, had no knowledge as to the condition of the bung, the condition of the drum, nor as to whether there was too much acid therein. He was given the drums to transport, and there was nothing inherently dangerous or obscure in his part of the transaction. If he was in any way at fault, it could only result from negligence in the operation of the truck, and as to any such negligence plaintiff and its employee should have been as fully informed as is defendant Peter.

But, although the doctrine of "res ipsa loquitur" is applicable as to the Grasselli Company, it does not necessarily follow that its liability is absolute. The only effect of that doctrine is to throw on defendant the burden of overcoming the presumption of negligence which, by the doctrine referred to, is created. In Jaggard on Torts, vol. 2, page 938, appears the following:

"While it is true as a general proposition that the burden of showing negligence on the part of the one occasioning an injury rests in the first instance upon the plaintiff, yet, when he has shown a situation which could not have been produced except by the operation of abnormal causes, the onus rests upon the defendant to prove that the injury was caused without his fault."

The witnesses of the Grasselli Company testified that the drum and the bung were examined before the drum was filled, and that no defects were discovered. The employee who filled the drum also testified that he screwed in the bung with a large wrench, and that he then rolled the drum for some distance on its side, and it is argued from this that the bung must have been properly inserted. It is also testified that, in filling the drum, sufficient space was left to provide for the gas which is formed and which, the experts stated, might explode such a drum, if filled too nearly full.

In fact, the proof on this point is so thorough that, were it not for the uncontroverted fact that the bung actually blew out, we would find it difficult to believe that any unforeseen event actually happened.

As we view the evidence, only three possible causes can be assigned for the occurrence. Either the bung was defective, or it was not properly screwed in, or the drum was so negligently handled by the driver of the truck that the jolting caused the explosion. This last possibility we must at once eliminate, because there was no evidence whatever of any unduly rough handling. It is true that two witnesses testified that their attention was attracted by a noise which they describe as that made by two heavy objects bumping together, but there is no doubt whatever that no collision occurred, that there was no unusual jolt or jar, and it is probable that the noise they heard was the blowing out of the bung and the sudden explosion into the air of the acid. It is true that such acid should not be left for long periods exposed to the sun, but the evidence shows that in this case it had been in the truck only about twenty minutes, and

we do not feel that this had anything to do with the matter. The elimination of the possibility of negligent handling leaves only two reasonable possible causes,—one, as we have stated, that the bung was defective, and the other that the bung was not properly inserted.

Unfortunately for the contention of defendant that the bung was in good condition and was properly inserted, it appears that this much discussed article was found after the accident, and that at that time the threads thereon were in such bad condition that it was worthless for further use. It is true that the expert testified that sulphuric acid, when diluted with water, will eat away iron very rapidly, and the condition of the bung after the explosion is said to have probably resulted from the fact that a fire engine pumped water on the truck, and that this bung fell into a small pool of acid and water.

We cannot avoid the conclusion, however, that the bung must have been in bad condition when it was inserted into the drum, and that the employee who inserted it did not notice this condition. If the threads were partially eaten away, it could not hold firmly in place, and the pressure of the gas then could easily force it out.

The Grasselli Company contends that, for such amount as may be awarded in plaintiff's favor and against it, it should have judgment over against Peter under a contract entered into between it and Peter reading as follows:

"In consideration of any contract hereafter to be made and entered into with us/me by The Grasselli Chemical Company, a corporation of Ohio, for transportation of its goods, employees, etc. by one or more of my/our auto trucks, or teams and wagons, or for the use and operation or

hire of one or more of my/our auto trucks, or teams and wagons, with the services of a chauffeur, driver, teamster or helper, I/we hereby agree to hold and save The Grasselli Chemical Company, its agents, officers and employees harmless from any loss, damage or liability which it may suffer, or be about to suffer from any claims, demands, action or causes of action which may be made or had against it by reason of the use, maintenance or operation of said auto trucks, teams or wagons, or by virtue of any accident or injury involving the said trucks, or teams and wagons, or services of the said chauffeur, driver, teamster, or helper; and I/we further agree to protect ourselves and the said The Grasselli Chemical Company by carrying liability and property damage insurance on said trucks or teams and wagons in the amount of $5,000.00."

We see no call in warranty in the record, but, even if we concede that the Grasselli Company has taken the proper steps to protect itself under this contract, it is very evident that the contract has no application to the situation which existed here. The intention of the parties thereto was that Peter should indemnify the Grasselli Company against any loss which might result from his negligence, which, if suffered by third persons, might be legally chargeable to the Grasselli Company. Here the negligence was wholly chargeable to the latter company, and Peter was in no way responsible either directly to plaintiff or to defendant under the indemnity contract above set forth.

Having reached the conclusion that for such damage as was sustained the Grasselli Company is liable, it now behooves us to consider just what that damage amounted to. The court, a qua, fixed the amount at $322, but plaintiff has voluntarily remitted $46 thereof.

Although the petition alleges that the repairs have been made, the proof shows that such is not the case, and that the automobile was sold for junk. It has been held that, although such repairs are not actually made, nevertheless the plaintiff may recover such damage as he has sustained, and that the amount of such damage may be determined by taking into consideration the estimates submitted by those offering to make the repairs. Hays v. Brantley, 13 La. App. 219, 127 So. 5; Baudine v. Teche Transfer Co. (La. App.) 130 So. 60.

Adopting this method of arriving at the amount of the damage, we reach the figure $276.

But, since the automobile in question was a part of the stock in trade of plaintiff and was being held for the purpose of sale, we believe that the better way to determine the loss, since the repairs were not made, is to deduct from the prior sale value the value which the damaged car had after the accident. The prior sale value seems to have been at least $300 and the value afterwards was $25. Thus the loss arrived at by this method is at least $275, which is $1 less than the amount of the judgment after taking into consideration the remittitur. The difference is so small that we conclude to let the judgment stand as it is, subject, of course, to the voluntary remittitur entered by plaintiff.

The judgment in favor of plaintiff against the Grasselli Chemical Company is amended so as to reduce the amount thereof to $276, with legal interest from judicial demand, and, as thus amended, it is affirmed, at the cost of appellant.

The judgment in favor of A. J. Peter and against plaintiff is affirmed at the cost of appellant.

Both judgments affirmed.