### MONKHOUSE v. JOHNS.
### No. 4302.

Court of Appeal of Louisiana. Second Circuit, Second Division.
June 11, 1932.

to Shreveport. Defendant did the driving over and back to the time and place of accident hereinafter described. One stop of thirty minutes was made at Terrell for breakfast. They had traveled 86 miles when, at the lower end of a grade of several hundred feet, where the road made a sharp curve to the left, the automobile quit the road at an angle, to the right, crossed the shallow borrow pit or ditch, straddled the ditch bank, and continued easterly for 243 feet, finally resting against a tree 16½ feet from the concrete highway. This was about 5:30 o'clock a. m. About halfway from point of leaving the road to the tree, the car ran into and uprooted a stump and dragged it to the tree. The impact of the car against the tree hurled the occupants against the inner front portion of the car, inflicting serious injury to both.

Plaintiff instituted this suit against defendant to recover damages for the injuries received in the accident. He charges two specific acts of negligence to defendant as contributing to the accident, viz.: (1) That he was driving his car at an excessive rate of speed, sixty miles per hour, approximately, when it left the highway, in violation of the law of the state of Texas limiting speed to 35 miles per hour; and (2) that defendant, immediately prior to the accident, fell asleep. He alleges that he protested against said excessive speed, and offered to relieve defendant by driving the car himself.

In his original and amended petitions plaintiff details the nature and extent of his injuries. He itemizes his damages as follows:

Pain and suffering caused by the said injuries ................................. $15,000.00
Disfigurement caused by the cuts upon his face and nose..................... 5,000.00
Permanent injury to the breast, the head and back .............................. 5,000.00
Total loss of earnings as extra Deputy Sheriff under T. R. Hughes, Sheriff of Caddo Parish, for 42 days at $5.00 per day ... 210.00
Loss of future earnings because of partial disability .................................. 2,500.00

Total ...................................... $27,710.00

Foster, Hall, Barret & Smith, of Shreveport, for appellant.

Cook & Cook, of Shreveport, for appellee.

TALIAFERRO, J.

Defendant, a physician of the city of Shreveport, had a patient he desired to take to a sanitarium in Dallas, Tex., and plaintiff, a deputy sheriff of Caddo parish, was employed to accompany him on the trip. They left Shreveport in defendant's Buick sedan automobile about 4 o'clock the evening of July 19, 1930. They reached Dallas between 1 o'clock and 2:30 o'clock the following morning. Thirty minutes were spent at the sanitarium and then they began the return trip

Defendant denies that the accident was caused by negligence on his part. He avers that he was driving carefully along a downgrade, on the right-hand side of the highway, when two cars approached from the east, meeting him; that just before his car met them the rear car of the two swung out to its left in an attempt to pass the car ahead of it and in doing so blocked the road in front of defendant; that confronted with this sudden peril and emergency he was forced involuntarily and instinctively to turn his car towards the right in the effort to clear the two on-coming cars and avoid a head-on collision with one of them, and was forced off of the roadway into the ditch; that the roadway

and the ditch, parallel thereto, turned to the left at this point, and for this reason he was unable to drive his car back into the road before striking the concealed stump, although he did everything in his power to do so. In the alternative, he pleads contributory negligence on part of plaintiff in that he requested defendant to make the return trip from Dallas at night, and in that he rode with respondent, observing every detail of his operation of the car, and made no objection thereto, nor did he express a desire to alight from the car nor make an effort to do so.

The lower court gave plaintiff judgment for $5,210. Defendant prosecutes appeal.

Plaintiff offered no proof in support of his allegations that defendant fell asleep immediately prior to the accident and that the authorized limit of speed for an automobile to travel on the highways of Texas is 35 miles per hour. These two elements of negligence pass out of the case.

We quote Dr. Johns' explanation of the accident because we think this testimony in conjunction with a few other proven facts in the record establishes negligence on his part as the proximate cause of the accident resulting in the injuries to plaintiff:

"At that particular place, the road curved down hill and just around the curve there were two cars approaching from the opposite direction, and the concrete road and the shoulder of the road there is very narrow and both cars were coming together and one of the cars attempted to pass the other about the time I passed these cars and it naturally forced me off of the road over on the shoulder or I had to hit one of the cars head on, so I turned off."

"I guess I ran thirty or forty feet on the shoulder and could not turn back suddenly and so I headed off of the road, thinking that would be less risky."

"Q. Was there a curve in the road there? A. Yes, sir.

"Q. Was the curve in the road sharp? A. Yes, sir.

"Q. Did you make the turn in the curve of the road there or did you go off before making it? A. Just about the turn, the way that I remember it.

"Q. How far were the two cars that were approaching you when you got over on the side of the road? A. I did not get on the side until the rear car almost come up on the outside of the other car.

"Q. How far in front of you? A. I would say about fifty yards, approximately."

Plaintiff and defendant were the only two witnesses to the accident. The former says the two cars referred to in defendant's answer were met halfway up the grade, to the west of the spot where the accident happened about 175 feet, and that they in no manner contributed to the automobile leaving the road.

We take the following from the trial judge's findings on the facts of the case, with which we fully agree, to wit:

"We think the evidence shows conclusively that the car went off the road, through a shallow ditch, then straddled a ridge, tore up a stump on this ridge and after dragging along this ridge about 150 feet, came to rest after striking a tree. The distance from the place where it left the road to the tree was between 240 and 250 feet. This distance would not be indicative of the speed of the car if it were not for the obstructions in the path of the car during its course. The testimony of plaintiff and Mr. Head, we think, makes it plain that the car was going far in excess of thirty-five miles per hour. We think it very likely that such was the speed of the car when it started down the incline, but before it reached the point of the accident it had naturally gathered momentum far beyond that speed."

It is conceded by both sides that the case is governed by the law applicable to driver and guest. Involved in this law is the principle, well settled by all the courts, so far as we are advised, that the driver must at all times have his machine under control. No fast rule can be laid down as to what constitutes "control." The circumstances of each case must determine this.

Defendant contends that the burden rests on plaintiff to prove his negligence, and that such negligence was the proximate cause of the accident.

Plaintiff invokes the maxim res ipsa loquitur, arguing that defendant's negligence was presumed or inferred from the fact of accident, shifting the burden to defendant to explain and to establish by proof freedom from negligence on his part as the proximate cause of the accident. Defendant, in answer to plaintiff's position in this respect, says that this doctrine is only applicable to cases where the cause of accident is unknown to plaintiff, wherein the presumption of negligence arises to supply lack of proof of fact; and that plaintiff by his own allegations admits knowing the cause of the accident. Here we might say that plaintiff's allegations are that the acts of negligence charged by him against defendant "contributed" to the accident.

The court below accepted plaintiff's contention and held that the doctrine applied, and further held that inasmuch as defendant did not overcome by evidence the negligence imputed to him from plaintiff's prima facie case, made up partly by a presumption of negligence, his responsibility was thereby fixed.

The doctrine of res ipsa loquitur has been applied by the courts of Louisiana quite fre-

quently within the past fifteen years and, we think, in some cases extended beyond its original purview. The doctrine was established long before the coming of the automobile. It is ancient. It has been applied in many cases involving automobile accidents.

Defendant quotes from the case of Barabin v. Transfer Co., 1 La. App. 197, wherein the court declined to apply the doctrine. We agree with that ruling. The facts of the case were different from those of cases where the rule has been applied where motor vehicles were involved. In that case the transfer company was sued for damages for the death of a man who was not riding in the company's bus when killed but on a truck, with others, which, it was alleged, the bus ran into.

In Lawson et ux. v. Nossek, 15 La. App. 207, 130 So. 669, the doctrine was applied. That case involved the law applicable to driver and guest. In part the syllabus reads as follows:

"Doctrine of 'res ipsa loquitur,' meaning 'thing speaks for itself,' raises presumption that accident caused by thing under control of person owing duty and not ordinarily happening resulted from want of due care."

"Evidence creating prima facie case for plaintiff in automobile accident suit shifts burden to defendant to show ordinary care."

In Livaudais v. Black, 13 La. App. 345, 127 So. 129, the doctrine was also applied. Defendant was able to overcome plaintiff's prima facie case by proof establishing plaintiff's contributory negligence. The syllabus in this case, in part, reads:

"Doctrine of res ipsa loquitur applied in action by passenger of automobile against driver for injuries sustained when car left road and hit tree."

The recent case of Hamburger v. Katz, 10 La. App. 215, 120 So. 391, is on all fours with the instant case. If that decision is good law, and we think so, it is decisive of the issues in the case at bar, for the facts of the two cases are almost identical. This case was cited and relied on by the lower court. The facts of that case are that plaintiff's wife was riding in defendant's car driven by him. It suddenly left the road, turning over several times down a high dump, inflicting injuries to the wife of which she died. Defendant was unable to overcome the presumption of negligence imputed to him, arising from the circumstances of the accident, and was held liable.

The rule was also invoked and applied in the case of Rowland v. Caddo Transfer Co., 5 La. App. 157, and in the case of Weikel against same company, reported in 5 La. App. 146. Both cases involved claim for damages arising from a collision of a motorbus, which left the highway suddenly, with a telephone pole.

In Motor Sales & Service, Inc., v. Grasselli Chemical Company et al., 15 La. App. 353, 131 So. 623, the rule was also applied. The court quoted from the cases of Dotson v. La. Central Lumber Co., 144 La. 78, 80 So. 205, and Lykiardopoulo v. N. O. & C. Ry., Light & Power Co., 127 La. 310, 53 So. 575, 576, Ann. Cas. 1912A, 976.

In White v. Maison Blanche Co., 142 La. 265, 76 So. 708, 709, the doctrine was applied by our Supreme Court, though the facts of the accident were as well known to plaintiff as to the defendant, though the cause of it was not known to plaintiff. He was working for defendant, standing on a scaffold. It collapsed and plaintiff was suddenly precipitated to the ground below and injured. It was evident the scaffold was imperfectly built by defendant's agents, or was overloaded at time it fell. The court, inter alia, said:

"And if without fault on his part the servant gets injured, presumption arises that the place was unsafe, and the burden of proof is upon the master to show that he had performed the duty imposed upon him by law, of providing his servant with a reasonably safe place to perform his work."

In the Lykiardopoulo Case, supra, the court extended the rule of pleading further than we have found in any other case, for it says:

"In such cases, the plaintiff not only need not allege the particular acts of omission or commission from which the accident has resulted but need not even prove them. The accident itself makes out a prima facie case, and the burden is on defendant to show absence of negligence."

That case arose from the scalding to death of a young Greek by explosion of a tube of one of defendant's boilers. His father, a resident and citizen of Sparta, Greece, instituted the suit. He, of course, had no personal knowledge of the facts of the accident, and the court, after applying the doctrine of res ipsa loquitur, used the language quoted above.

In the very early case of Stokes v. Saltonstall, 13 Pet. 181, 10 L. Ed. 115, where the evidence showed that a stagecoach left the road and turned over and injured plaintiff, the doctrine was applied. This case is quoted from with approval in Sweeney v. Erving, 228 U. S. 233, 33 S. Ct. 416, 57 L. Ed. 815. In this latter case the court did not pass upon the question of the applicability of the rule to the case but addressed itself mostly to the effect of the rule when applied in any case. It is said there that where the rule is appropriately invoked it has not the effect of shifting the affirmative burden of proof to defendant, but makes it incumbent upon the defendant to adduce proof exculpating himself from negligence, if he can and desires to do so. This case

is referred to and quoted from in Lawson v. Nossek, supra.

Berry on Automobiles (4th Ed.) p. 564, has this to say:

"The doctrine of res ipsa loquitur was held to apply where a guest in the defendant's automobile was thrown therefrom and injured by reason of the car leaving the road and running into a tree, as defendant was driving it on the highway at about forty miles an hour."

Many other cases could be referred to. Defendant cited several in his brief, but we do not think these are in conflict with the principle enunciated in the decisions mentioned above.

■ It seems clear to us that what is said, or intended to be said, by the authorities mentioned, and by many others to same effect, is that in cases where the doctrine is applied, the affirmative burden of proof does not shift from plaintiff to defendant, but that having made out a prima facie case, with the aid of the presumption or inference of negligence of defendant as the proximate cause of the accident, the burden does devolve upon defendant, if he desires to or can do so, of continuing with the evidence and adducing proof explanatory of the negligence imputed to him and in support of his plea of nonliability. In other words, a plaintiff is entitled to judgment when the fact of accident has been established and the facts of the case warrant application of the rule, if defendant offers no proof.

■ Also, we conclude that these authorities sustain the proposition that the application of the rule should not be confined to cases where plaintiff is entirely ignorant of the cause or causes of the accident.

In the case at bar we are certain the accident was caused by defendant losing control of his car. That seems obvious. But we do not know positively why he lost control of the car unless its high rate of speed be accredited therewith, coupled with the negligence of the second car ahead of him. Plaintiff does not know. Defendant is the one person that does or should know. It devolved on him to explain.

The rule prevailing in the various states appears to be as follows: Res ipsa loquitur is a phrase which imports that in each case there must be something in the facts that speaks of the negligence of defendant; that is, that the thing which caused the injury was under the management of the defendant or his servants, and the accident was so unlikely to occur, if proper care had been exercised, as to justify an inference that it was due to some neglect of duty. The general rule is that the occurrence of an accident does not raise the presumption of negligence but, where the testimony which proves the occurrence by which the plaintiff was injured discloses circumstances from which the defendant's negligence is a reasonable inference, a case is presented which calls for defense.

We think this is an accurate exposition of the law on the question of application of the doctrine of res ipsa loquitur.

■ Having decided that the doctrine of res ipsa loquitur applies in this case and that plaintiff with the aid of the presumption in his favor, following application of the rule, made out a prima facie case, we shall consider defendant's effort to overcome that case.

Defendant's car was coming downgrade near daylight, with lights on. The cars meeting him also had lights on. He says he was traveling 35 miles per hour. Fifty yards ahead of him, according to his own evidence, he saw an emergency in traffic which should have impressed him with the absolute necessity of reducing his speed and of bringing his car under control. So far as the evidence shows he made no effort to do so. The road there is of concrete 31 feet wide with shoulders sloping 1½ feet to ditch. The borrow pit is shallow. When he observed that one of the on-coming cars was trying to pass the other, he steered his own car over to his right, placing the right wheels on the shoulder of the road. He admits he ran 30 or 40 feet with the right wheels on the shoulder before going into the ditch. This was done, he says, "about the turn" in the highway. Evidently defendant meant to say he ran the distance mentioned after passing the cars before going into the ditch. Bearing in mind that the car ran 243 feet before contacting with the tree that arrested its further progress, that it left the roadway at the curve and when stopped it was only 16½ feet from the road, that the physical signs along its path of travel to the tree indicated unmistakably that after leaving the road it was moving with considerable force and speed, the conclusion is irresistible that immediately prior to and at time of the emergency at the road's curve, the car's speed was such as to make it impossible to negotiate the curve and instead of holding the road the car pursued a direct course off of it. Had the car been under control this would not have happened.

■ Defendant's excuse for not bringing the car to a stop before it hit the tree is that he endeavored to apply the emergency brakes as it left the highway and was thrown violently against the steering wheel and was knocked into a daze. This may be true, but it does not affect his negligence before leaving the road. The negligence chargeable to him is that he did not reduce the car's momentum the moment he discovered the emergency ahead of him at or about the

curve, bringing it under control, so that the rate of speed would not prevent it being kept on the road at the curve. It is possibly true defendant did not know that the road curved sharply ahead of him, but a driver has not the right to assume that the roadway ahead of him, beyond the range of his vision, is clear and free from danger; and then act on the assumption, without incurring responsibility for his imprudence.

■ The fact that one of the cars in front of defendant may have been negligent, under the circumstances, in the attempt to pass the car ahead of it, does not relieve defendant of responsibility for his own negligence. The most that can be said is that the joint or concurring negligence of the driver of that car and defendant caused the accident, was the proximate cause of it and, if true, both are responsible for the resulting damages.

The contributory negligence urged against plaintiff as a guest is that he did not protest against plaintiff driving at an excessive rate of speed.

■■ Plaintiff at no time exercised any control over the operation of the car. He offered to relieve defendant as driver but the offer was not accepted. He was employed to accompany defendant on the trip to Dallas; and, therefore, was not a guest, as ordinarily understood, nor gratuitous passenger. Defendant's negligence cannot be imputed to plaintiff. Lorance v. Smith, 173 La. 883, 138 So. 871; Daull v. N. O. Ry. & Lt. Co., 147 La. 1012, 86 So. 477. He testified positively that he did protest to defendant about the speed he was traveling but defendant denies that he did so. Contributory negligence is a special defense and the burden of establishing it rests on the pleader. Boutte v. N. O. Terminal Co., 139 La. 945, 72 So. 513; Buechner v. City of New Orleans, 112 La. 599, 36 So. 603, 66 L. R. A. 334, 104 Am. St. Rep. 455.

■ We have stated heretofore that the evidence does not show that defendant consistently drove too fast on the return trip from Dallas, but did do so on the grade to the place of accident. As remarked by the trial judge, a protest at this juncture would not have accomplished anything. The emergency which defendant says caused him to take to the ditch was discovered by him the moment it arose; plaintiff could not have seen it sooner. We do not think the plea of contributory negligence has been sustained.

"Where contributory negligence is a special defense and the evidence is conflicting, the court will not consider the contributory negligence proven." Armour Packing Company v. Walker Price Oil Co., 1 La. App. 477.

■ The duty of the driver of an automobile to the passenger or guest therein, free from contributory negligence, is well established by many decisions of our courts and those of other jurisdictions. That duty requires that at least ordinary care be exercised in the operation and control of the car to the end that no injury be caused. Lorance v. Smith, 173 La. 883, 138 So. 871; Pipes et al. v. Gallman, 173 La. 158, 136 So. 302; Lawrason v. Richard, 172 La. 696, 135 So. 29.

We are not convinced that any of the injuries to plaintiff are permanent. Several superficial wounds to forehead and face and one on the shin were inflicted. These had healed completely long before the trial of the case. The disfigurement from the scars is not noticeable except at close observation. His eyesight was not affected, according to the opinion of the physician who examined him for glasses in August after accident. Dr. Browning treated plaintiff for four weeks or more and stated that progress towards complete recovery, as a whole, was very satisfactory. He stated that plaintiff was having some trouble when he left the sanitarium, but did not report back for additional attention. He prescribed for the headaches he was having. These he thought were due to nerve injury and would cease after six or eight months. The most serious injury of which plaintiff complained to time of trial was the sacroiliac strain. Dr. Browning recommended wearing a belt for this. Plaintiff followed his advice and was wearing it at time of trial of the case. It supports the back.

Plaintiff weighs 240 pounds. No doubt he was badly shaken up by the accident and was fortunate in that his injuries were not more serious. He was able to resume work as deputy sheriff on September first following the accident and has been able to discharge the duties of that employment since that time. He lost 42 days while recuperating from the effects of the accident. He was receiving $5 per day. At time of trial his physical appearance indicated good health.

■ We think the award of damages to plaintiff by the court below excessive. The evidence does not disclose the time usually required for a strain of the sacroiliac joint to be restored to normal condition, but the fact that plaintiff was able to resume his duties as deputy sheriff so soon after his injuries and was performing those duties to the time of trial shows clearly that the strain does not materially interfere with his official activities.

We think $2,000 in addition to allowance for loss of time will amply compensate him.

For the reasons herein assigned, the judgment of the lower court is amended by reducing the amount of same to $2,210 with legal interest from judicial demand, and, as thus amended, said judgment is affirmed.