LANDRY, Judge.
The Parish of East Baton Rouge (Parish) and J. H. Jenkins, Contractor, Inc., (Jenkins) and Jenkins’ insurer, The Travelers Insurance Company (Travelers), take these appeals from the judgment of the lower court awarding plaintiff judgment for damages to plaintiff’s residence resulting from construction incident to improvement of the North Melrose Canal, a project undertaken by the Parish on premises adjoining those of plaintiff.
*849 The work was performed by Jenkins for the Parish pursuant to a contract containing a hold harmless or indemnity clause. The Parish filed an exception of no cause of action based on the hold harmless clause in its contract. The Parish also filed a third party demand against Jenkins and Travelers for reimbursement under the hold harmless agreement in the event the Parish should be held liable. Jenkins and Travelers reconvened against the Parish. The trial court absolved Jenkins of negligence and held the Parish liable under LSA-C.C. Article 667. The trial court also awarded the Parish judgment against Jenkins and Travelers under the indemnity clause in the contract. We affirm the judgment of the trial court exonerating Jenkins from liability resulting from negligence. We affirm the judgment of the trial court holding the Parish liable but for reasons different from those given by the lower court. We reverse the judgment granting the Parish recovery from Jenkins and Travelers under the indemnity clause.
The facts of this case are undisputed. Plaintiff concedes Jenkins was not negligent in the performance of the work. The project called for the enlarging of an existing open drainage canal and its improvement by installing therein two parallel lines of large concrete pipe to serve as conduits. The pipes, approximately 101/2 feet in inside diameter, were extremely heavy and ponderous, each section thereof weighing approximately 19 tons. The dual pipes, spaced five feet apart, were covered with earth. Excavation was effected through the use of large earth moving bulldozers and a dragline or crane. The sections of pipe were lowered into place by means of a self-propelled dragline which moved on tractor-like treads. After enlargement, one bank of the “canal” was within approximately 10 feet of plaintiff’s residence.
In essence plaintiff testified his home was built approximately 12 years prior to the project in question. At the time the work was performed, the residence was in excellent condition. During construction, movement of the heavy dragline caused the house to vibrate, particularly in the kitchen which room was nearest the work site. After the work had been in progress for some time, plaintiff noticed cracks around the doors and windows and complained to a workman at the site that the work was damaging plaintiff’s residence.
Mrs. Chaney testified substantially to the same effect as plaintiff. She also stated that the vibration was so bad it materially interfered with television reception. To protect some of her delicate glassware, she removed it from her china closet and placed it in boxes on the floor. She also noted that the tremors caused her kitchen cabinets to pull loose approximately one and a half inches from the wall.
Dr. Louis J. Capozzoli, Jr., called as an expert by plaintiff, testified he is head of a firm of consulting engineers whose specialty is foundation work. His inspection of plaintiff’s home after completion of the project revealed cracks in the sheet rock walls going from the corners of virtually all door and window openings. He concluded the cracks were fresh and had appeared within a year of his inspection. Dr. Capozzoli found no signs of settlement around the outside perimeter of the house but did observe some unevenness in the interior flooring. He was of the opinion that the settlement noted did not cause the cracks. In Dr. Capozzoli’s opinion the large dragline used to place the pipes in position would cause sufficient ground vibrations to produce the damage in question if the dragline had been operated on the side of the canal on which plaintiff’s home is located. He also stated that if the drag-line were operated on the opposite side of the canal, the intervening excavation would tend to isolate the vibrations to the point that the resulting disturbance should have little effect on plaintiff’s residence. He conceded, however, that even situated on the opposite side of the excavation, the dragline could conceivably cause the damage. It was his opinion that the movement *850 of this ponderous machine did in fact cause plaintiff’s walls to crack.
Kenneth Lindsey, job superintendent for Jenkins, and Herman Rogillio, Project Engineer for the Parish, testified in essence that, among other equipment, a 100 ton dragline was used in the excavation work. They also stated that the canal was deepened and enlarged considerably to accommodate the pipes. When excavation was completed, gravel was placed in the bottom of the hole. The pipe sections were then placed in the hole by the dragline and shoved into proper alignment with a bulldozer. Afterwards the pipes were covered with earth. They also stated that the dragline operated at all times on the side of the canal opposite plaintiff’s residence. Neither witness observed any cave-ins near plaintiff’s home. Both stated that at no time did plaintiff complain of damage to his home.
In holding defendant Parish liable, the trial court relied upon LSA-C.C. art. 667, and the decision of this court in Reymond v. State, Department of Highways, La.App., 217 So.2d 488, rendered December 16, 1968. Article 667, above, states:
“Art. 667. Although a proprietor may do with his estate whatever he pleases, still he can not make ■ any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.”
Plaintiff in Reymond, above, sued for structural damages to her home resulting from construction of a nearby interstate highway. The court sustained an award in plaintiff’s favor on the finding that Article 667, above, rendered defendant liable for damages caused plaintiff’s residence because of vibrations resulting from pile driving operations within the highway right of way.
Our decision in Reymond was reviewed by the Supreme Court in Reymond v. State Department of Highways, 255 La. 425, 231 So.2d 375, rendered January 20, 1970, wherein the applicability of Article 667, above, was stated as follows:
“The English word ‘work’ in Article 667 is a translation of the French ‘ouv-rage’ used in Domat’s No. 8, and both can mean either ‘labor’ or ‘construction, structure, or building’. In the light of the examples given by Domat in his discussion of the law which became the source of our Article 667, it is clear that ‘ouvrage’ and ‘work’ mean ‘construction’. Furthermore, our use of the combination of words ‘make any work’ not only connotes but denotes the meaning ‘construction’ or ‘building’.
* * * * * *
“Our Article 667 as modified by Article 668 either creates a veritable predial servitude and is a ‘catch-all’ for any possible omissions from the later articles prescribing particular servitudes of law, or is a general statement of the principle of law forming the basis of certain particular servitudes which are thereafter enumerated. Whether it establishes a true servitude or states the general principle concerning servitudes of law so as to serve as an introduction and explanation of such servitudes, it is a law of property and is inapplicable to the activities of man. Man’s activities are not the subject of predial servitudes, for it is an estate and not man which is subservient to a servitude. The redress which the article affords, if any, exists only in favor of a proprietor and then only against the proprietor of a nearby estate for construction or plantings upon that estate which by their very existence deprive the former of the use and enjoyment of his property or which cause him damage. The fact that jurisprudence of this court and of the Courts of Appeal has fallaciously interpreted and applied Article 667 for many years is no reason for this court to disregard the positive meaning, clearly expressed, of that statement of law and the only results which could have been intended.”
*851 The foregoing makes it clear that Article 667, above, is inapplicable in instances where an owner’s activities on his property causes damages to adjacent owners. In effect the Supreme Court has held in Reymond that Article 667, above, involves a law of property and is applicable only when an existing structure, by virtue of its existence, deprives an adjoining property owner of the use of his property or causes damage thereto. We deem the Supreme Court’s decision in Reymond decisive of the case at hand. Since the instant suit involves damages allegedly resulting from the actions of man, namely, improvement of a drainage canal, it does not fall within the purview of Article 667.
Despite denying plaintiff’s right in Rey-mond to recover on the basis of Article 667, above, the Supreme Court therein stated:
“We do not overrule the jurisprudence which has allowed recovery for damages resulting from the use of dangerous in-strumentalities and materials or man’s engagement in inherently hazardous activities. We simply find Article 667 inapplicable in such situations. We need not and do not state the basis, authority, or source for recovery in cases of this nature. In the particular case before us the damage complained of by plaintiff arose out of and in connection with a public body’s exercise of eminent domain, and the recovery against this defendant, which plaintiff seeks in an alternative plea, is provided in special constitutional and statutory provisions for the exercise of the right of eminent domain.”
We conclude from the foregoing that a plaintiff who formerly relied upon Article 667 to recover damages resulting from the activities of man, can no longer recover on this basis but is not precluded from recovery upon some other authority provided for by law.
Notwithstanding an absence of negligence and the inapplicability of Article 667, the Supreme Court in Reymond, above, nevertheless held defendant, the Department of Highways, liable to the adjoining property owner pursuant to La. Const. Article 1, Section 2, which provides that private property shall not be taken “or damaged except for public purpose and after just and adequate compensation is paid”. We note the following pertinent language in Reymond, above:
“Article 1, Section 2, of the Louisiana Constitution reads in part: ‘ * * * Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid.’ (See also Article 4, Section 15.) Sections 19 and 19.1 of Article 6 authorize the Legislature to define the Department of Highways’ exercise of eminent domain, and under the authority of R.S. 48:441 et seq. the Department has expropriated property for Interstate 10 in the vicinity of plaintiff’s property. Since a taking or damaging of property may in fact occur without expropriation proceedings by a public body through oversight or lack of foresight, there must be some proceeding whereby an owner may seek redress when his property is damaged or taken without the proper exercise of eminent domain. Such an action is often referred to as ‘inverse condemnation’, and our Article 1, Section 2, and Article 4, Section 15, support a proceeding in the nature of inverse condemnation by such an affected property owner.
The liability of a public body for property taken or damaged but not included within its actual expropriation activity must be limited to those instances where there is a physical taking or damage to that property or a special damage peculiar to the particular property and not general damage sustained by other property similarly located.
****** From an independent study of the record we cannot say that the trial court and *852 the appellate court have manifestly erred in finding that the plaintiff has discharged the burden of proving that the structural damage to her residence was caused by the pile driving activity during the construction carried on by the Department of Highways. In such cases as this, proof of the causative factor is subject to the same standard as proof of negligence in a delictual action. Damage and causation are the necessary prerequisites for recovery, and they must be affirmatively shown by a preponderance of the evidence. We conclude that the plaintiff should recover for the structural damage to her house.”
The foregoing declares that an owner is entitled to recover not only for a direct taking but also for special damages, such as structural damage to an edifice or building, pursuant to the above mentioned constitutional authority. It appears the owner need only establish causal relationship between the damage and the construction activity on a public project. This is but a reiteration of the well established rule applied in Kendall v. State, Department of Highways, La.App., 168 So.2d 840, and authorities therein cited. In Kendall, plaintiff sought damages for silting and filling of her privately owned lake resulting from construction of a highway project. The Court allowed recovery pursuant to La.Const. Article 1, Section 2, despite the fact no portion of plaintiff’s property was expropriated and defendant was not shown to have been guilty of negligence. In reaching this result, the Court stated:
“The trial court in its ‘Reasons for Judgment’ stated: ‘The evidence is clear that in the construction of Interstate Highway No. 20 and in the performance of its governmental function in the construction of said highway damage was inflicted upon the property of the plaintiff and the plaintiff is entitled to recover for that damage, regardless of whether we place her demand upon the basis of Article 667 of the LSA-Civil Code or upon the requirement of the Constitution that the State pay damages to those whose property it has damaged in carrying on its public work,
‘We say that it makes no difference which of the two legal provisions we follow as a basis for liability as to the State.’
We are in agreement with the trial judge’s conclusion. Regardless of whether the cause of action arose out of Articles 2315 or 667 of the LSA-Civil Code, whenever a governmental agency engages in an undertaking with a public purpose and public benefit which directly results in a damaging of private property the ‘or damaged’ provision of the above quoted constitutional article is self-operating and creates a cause of action.”
We hold, therefore, that plaintiff has a cause of action against the Parish herein pursuant to La.Const. Article 1, Section 2, in accordance with the rule pronounced in Reymond and Kendall, above.
Regarding Jenkins’ alleged liability, it has long been established that a contractor performing public work for a governmental agency is not liable for damages sustained by an adjacent property owner, unless the contractor was guilty of negligence which caused the damages, the provisions of Article 667 to the contrary notwithstanding. Myevre v. Boh Brothers Construction Company, La.App., 192 So.2d 859; Loesch v. R. P. Farnsworth & Co., La.App., 12 So.2d 222. It appears therefore the trial court correctly rejected plaintiff’s claim against Jenkins, not only on the basis of the hereinabove cited authorities, but also conformably with the Supreme Court’s ruling in Reymond, above.
Defendant Parish, relying on Bazanac v. State, Department of Highways, La.App., 218 So.2d 121; Klein v. Department of Highways, La.App., 175 So.2d 454, and Beck v. Boh Brothers Const. Co., La. App., 72 So.2d 765, maintains that Article 667 cannot be invoked against a public *853 body. It appears that the Parish contends the cited authorities hold that absent a showing of negligence, a public body is immune from suit for damages occasioned by its construction of a public work. We find, however, that Beck, Klein, and Ba-zanac, above, stand only for the proposition that a public body may not be held liable under the provisions of Article 667. The cases hold that a public agency is not an “owner” within the contemplation of Article 667 because it does not own property in the same capacity as private persons. The authorities also hold that a public agency is not a “neighbor” within the meaning of the term as used in Article 667. The cases do not establish a rule of general immunity for public agencies with respect to construction of public works. Assuming such a rule might be inferred from the cases relied upon, such presumption is clearly refuted by Kendall and Reymond, above, wherein recovery was permitted under circumstances substantially similar to those involved herein. We hold, therefore, that defendant Parish may be held liable herein pursuant to La. Const. Article 1, Section 2.
We likewise believe that equitable considerations are sufficient to render an owner of property and also the holder of a servitude liable for damages to neighboring estates resulting from the exercise of the rights of ownership or the privileges resulting from the servitude. In this regard we note that LSA-C.C. art. 21 provides:
“Art. 21. In all civil matters, where there is no express law, the judge is bound to proceed and decide according to equity. To decide equitably, an appeal is to be made to natural law and reason, or received usages, where positive law is silent.”
It seems anomalous to us that one who deliberately, albeit without negligence on his part, undertakes construction of some work on his property, or property over which he enjoys a servitude, should escape liability for damages to his neighbors merely because he acted without fault. Assuming the law was silent as to the neighbor’s right to recovery under such circumstances, we believe equitable principles are proper grounds for imposing liability.
Irrespective of whether plaintiff recovers under La.Const. Article 1, Section 2, or LSA-C.C. art. 21, plaintiff must establish causal relationship between defendant’s activities and plaintiff’s damages.
The trial court found such causal relationship in the case at bar. Our review of the evidence, as hereinabove set forth, convinces us of the correctness of this determination.
The trial court predicated Jenkins’ liability to the Parish under the following''contractual provision:
“It is further agreed that the contractor shall hold owner free and harmless from all claims of damages to persons and/or property that may arise out of or by reason of the performance of said work, or due to the negligence, commission, or omission of any act by contractor, his employees, agents, or subcontractors.”
Jenkins and Travelers rely on Arnold v. Stupp Corporation, La.App., 205 So.2d 797, in contending the above indemnity clause is inoperative herein. We find Arnold, above, inapplicable to the case at bar because of a material factual distinction. In Arnold, above, a similar indemnification agreement was held to be ineffective because the negligence of the indemnitee caused the injury for which recovery was sought. Here the Parish is without fault.
Our jurisprudence is established to the effect that indemnity or hold harmless clauses of the nature herein involved are construed to mean that liability is imposed on the indemnitor only where there is fault or liability on the part of the indemnitor which may in turn be imposed upon the in-demnitee.
*854 In Motor Sales & Service v. Grasselli Chemical Co., 15 La.App. 353, 131 So. 623, a public drayman contracted to transport drums of chemicals for the Grasselli Company. Due to Grasselli’s negligence, acid escaped from one of several drums being carted over the public streets, damaging the property of a third party. Relying upon an indemnity clause similar to that involved herein, Grasselli prayed for judgment against the drayman. The clause provided:
“* * * i/we hereby agree to hold and save The Grasselli Chemical Company, its agents, officers and employees harmless from any loss, damages, or liability which it may suffer, or be about to suffer from any claims, demands, action or causes of action which may be made or had against it by reason of the use, maintenance, or operation of said auto trucks, teams, or wagons, or by virtue of any accident or injury involving the said trucks or teams and wagons, or services of the said chauffeur, driver, teamster, or helper; * * *”
The court interpreted the foregoing provision as follows:
“The intention of the parties thereto was that Peter should indemnify the Grasselli Company against any loss which might result from his negligence, which, if suffered by third persons, might be chargeable to the Grasselli Company. Here the negligence was wholly chargeable to the latter company, and Peter was in no way responsible either directly to plaintiff or to defendant under the indemnity contract above set forth.”
In Dorman v. T. Smith & Son, Inc., La. App., 55 So.2d 587, the court interpreted a similar hold harmless agreement which read as follows:
“The party of the second part shall hold harmless the party of the first part against any claims for death or personal injury of or to the employees of the party of the second part engaged in work under this contract, whether such claim be for compensation or for damages, or for any matter or thing, and/or any third person when such death or injury occurs in or grows out of the loading and/or. discharging or is in any way incident thereto.”
Dorman, above, interpreted the indemnity clause to mean:
“Our interpretation of these clauses is that they simply mean that if there is any fault or any legal liability on the part of T. Smith & Son, Inc., as a result of which, liability may be placed upon Alcoa Steamship Company, Inc., then T. Smith & Son, Inc. will hold Alcoa Steamship Company, Inc. harmless and will procure insurance against such liability.”
The cited authorities establish the rule that an indemnitor is bound under a hold harmless or indemnity agreement only where there is fault or legal liability on the part of the indemnitor which may in turn impose liability upon the indemnitee. We are in agreement with the rule which appears reasonable inasmuch as it could hardly be deemed the intention of the in-demnitor to reimburse the indemnitee where the indemnitor has incurred no legal liability, either through his fault or otherwise, for which the indemnitee could be held to account. There appears little doubt but that an indemnitor could assume liability notwithstanding his freedom from fault or otherwise becoming liable at law, but such liability will not be imposed save where the language of the agreement clearly expresses intent to that effect on the part of the indemnitor.
The Parish alleges that use of the 'words “by reason of performance of said work or due to negligence” is a clear expression of intent not to make enforcement of the hold harmless clause contingent on the indemnitor’s negligence or his incur-rence of liability transmittable to the Parish. We see no material distinction be *855 tween the language employed herein and that found in Grasselli Chemical Co. and Dorman, above. We conclude that the indemnity or hold harmless agreement in question does not render indemnitor Jenkins liable to the Parish for damages legally due and payable solely and only by the Parish. See also Hospital Service Dist. No. 1 v. Delta Gas, Inc., La.App., 171 So.2d 293; Jennings v. Ralston Purina Co., La.App., 201 So.2d 168, ánd Arnold v. Stupp Corporation, above.
It is ordered, adjudged and decreed that the judgment of the trial court is affirmed insofar as it rendered judgment in favor of plaintiff David Chaney and against defendant Parish and also affirmed insofar as it dismissed and rejected plaintiff’s demands against defendants Jenkins and Travelers. It is further ordered, adjudged, and decreed that the judgment of the trial court is reversed and set aside insofar as it awarded recovery to defendant Parish against indemnitors Jenkins and Travelers. All costs of these proceedings legally assessable to the Parish shall be paid by the Parish; all remaining costs to be paid by plaintiff, David Chaney.
Affirmed in part, reversed in part, and rendered.