289 So.2d 208 (1973)
Raymond S. McMORRIS et al.
v.
INSURANCE COMPANY OF NORTH AMERICA et al.
No. 9660.
Court of Appeal of Louisiana, First Circuit.
December 17, 1973.
*209 Wallace A. Hunter, Baton Rouge, for appellants.
Jerry E. Bunch, Denham Springs, for appellees.
Before LANDRY, ELLIS and PICKETT, JJ.
PICKETT, Judge.
This is an action by Raymond S. McMorris and E. L. May for personal injuries and property damage resulting from a fire which occurred on the afternoon of September 10, 1970. At the time of the accident, Mr. McMorris was employed by Mr. May to construct a house and while he was so engaged, a fire occurred which caused injuries to Mr. McMorris and the loss of the eighty per cent completed structure.
When the fire broke out Mr. McMorris was soldering bathtub faucets on the water lines, using a five gallon butane cylinder. He alleged that he had unsuccessfully tried to use a three gallon propane cylinder, which was preferable for this kind of work. After Mr. McMorris escaped from the fire and returned to the scene, it was discovered that the propane cylinder had ruptured or exploded.
The plaintiffs have sued the Turner Company, manufacturer of the propane cylinder, and its liability insurer, Insurance Company of North America, alleging a manufacturing defect in the cylinder which caused it to explode and urging the application of the evidentiary doctrine of res ipsa loquitur to compel the defendant manufacturer to exonerate itself from an inference of negligence.
The trial judge stated at the conclusion of the trial that "res ipsa loquitur does not apply in this case." The court nevertheless rendered judgment in favor of the plaintiffs, without assigning any reasons or findings of fact.
The evidence on behalf of the plaintiffs consisted almost entirely of the testimony of Mr. McMorris. He had been in the building and construction business since 1953 or 1954. He had used butane and propane cylinders for welding and soldering many times during this period. He purchased the propane cylinder only the day before the accident which forms the basis of this action occurred. He already had a torch or burner attachment, which was made by another manufacturer.
On the afternoon of September 10, he had been using the butane tank for heating lead in the living room. When this was completed, he intended to switch to the propane cylinder to solder the copper lines for the bathtub fixtures. He affixed the torch or burner to the cylinder while still in the living room, turned on the valve to release the gas and attempted to light it several times. He stated that he could get either no flame at all or a flame insufficient to do the work. He then carried the cylinder into the bathroom and repeated his attempts to get a sufficient flame. Again, he was unsuccessful. He stated that he turned off the valve and called to a helper to bring in the butane cylinder. He placed the propane cylinder on the floor next to the bathtub and began using the butane. He testified as follows:
"... I had soldered the cold water line on with the big one. I was having to put the adapters on these copper lines *210 in order to screw the faucets on. We did the cold water line and while I was heating and getting ready to solder the hot water line there was just a w-o-o-s-h and explosion in there, and the next thing I knew I was burning up and the house was, too."
The defendants presented testimony by Mr. Willard Vanderbeek, retired vice-president of the Turner Company. He explained in detail the manufacturing process for propane cylinders, which is governed by Department of Transportation specifications. The process included an air pressure and water bath test for leaks at 280 pounds per square inch. The propane is put in the cylinders so that the pressure would be approximately 135 pounds per square inch at 70 degrees Farenheit. The pressure varies according to temperature and the cylinders are tagged with a warning that they are not to be stored in temperatures exceeding 120 degrees Farenheit. He knew that a cylinder would explode when exposed to heat because the company runs experimental tests in this regard. He had never known of an explosion under the factual situation presented here, and could not conceive of what would cause it if indeed the cylinder was simply sitting on the floor. He testified as follows:
"... you must remember this tank had been manufactured, filled, stored in our warehouse, shipped on truck to somebody else's warehouse, and from there to another dealer, etc., and in all that time it was subjected to handling that you normally would have, and then all of a sudden it's sitting here on the floor and just exploded ... that's beyond my comprehension."
In Mr. Vanderbeek's opinion, the explosion had to be caused by an increase in internal pressure caused by external heat or vibration, which, depending upon the intensity, could happen very quickly.
Dr. Oscar W. Albritton testified as an expert in metallurgy and metallurgical failures. He was a professor in engineering at L. S. U. He had examined the ruptured propane cylinder and also concluded that the rupture was caused by increased internal pressure resulting from external energy, most probably heat. Vibration or other mechanical energy could also cause a critical pressure increase but such energy would have to be substantial. He found no evidence of a defect.
It should be noted at this point that no evidence was offered by plaintiffs relative to negligence on the part of Turner Company in the design, engineering or manufacture of the propane cylinder or of any particular defect that would cause a rupture. Thus, their case must fail unless some negligence of Turner Company may be inferred, under the evidentiary doctrine of res ipsa loquitur, to be the most plausible explanation of the accident. Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621 (1972); Pilie v. National Food Stores, 245 La. 276, 158 So.2d 162 (1963).
The negligence which is urged is that the cylinder "must" have been inherently weak so that it would explode under normal circumstances. Yet, as Mr. Vander-beek testified, the cylinder had been manufactured, stored, shipped and handled by several people, including Mr. McMorris, over a substantial period of time. And Dr. Albritton found no evidence of inherent weakness.
The defendants, therefore, contend that they have proven their freedom from negligence while the cylinder was under their control and that the accident must have been caused by factors beyond their knowledge or control thereafter. At the time of the accident, Mr. McMorris had control of the cylinder and had been tampering with it in an attempt to get it lighted. Defendants refer to the case of Evans v. Travelers Insurance Company, 212 So.2d 506 (La.App. 1st Cir. 1968). There, a refrigeration mechanic was injured when a pressurized can of freon exploded. *211 A distinction in that case is that the plaintiff was actually using the can at the time and the court found that an error on his part was as plausible an explanation of the explosion as an alleged manufacturing defect. Recovery was denied.
In the case of Motor Sales & Service v. Grasselli Chemical Company, 15 La.App. 353, 131 So. 623 (Orleans App.1930), a bung on a drum of sulfuric acid blew out while in the possession of an independent drayman. Although the court was obviously impressed by the defendant manufacturer's evidence of freedom from negligence, it nevertheless found that the blowout "must" have been caused by a defective bung or its negligent insertion and since no other explanation was available the manufacturer was found liable.
We do not believe that the facts in the instant case lend themselves to the same inference of specific acts of negligence by the Turner Company to the exclusion of other plausible explanations. The evidence as a whole does not justify the inference that some negligence on the part of Turner Company was the most plausible cause of the accident. To apply the doctrine of res ipsa loquitur in this case so as to compel the Turner Company to explain how the accident did occur would be to place on it a burden it could not possibly overcome and that is not the purpose of the doctrine.
As stated above, the trial court gave no reasons for the judgment but we find that the evidence does not support the result of a judgment in favor of the plaintiffs.
Accordingly, the judgment of the trial court is reversed and judgment is rendered against the plaintiffs-appellees Raymond S. McMorris and E. L. May and in favor of defendants-appellants the Turner Company and Insurance Company of North America dismissing plaintiffs' suit at their costs. Costs of this appeal are assessed against plaintiffs-appellees.
Reversed and rendered.