### PIZZITOLA v. LETELLIER TRANSFER CO., Inc.
### No. 16329.

Court of Appeal of Louisiana. Orleans.
April 6, 1936.

St. Clair Adams & Son, of New Orleans, for appellant.

Finnorn & Todd, of New Orleans, for appellee.

McCALEB, Judge.

On March 15, 1935, at about 1:30 p. m., Vincent Pizzitola, a man seventy-four years of age, was standing beside a truck parked on the lake side of North Peters street near the intersection of St. Philip street in the city of New Orleans.

This section of New Orleans is adjacent to the "French Market," and it is customary for vegetable trucks to park in rows at this point for the purpose of selling produce to the public.

While Pizzitola was standing in the manner aforesaid, a dray owned by the Letellier Transfer Company, Inc., and operated by one Boyd, its employee, was traveling on North Peters street in the direction of Esplanade avenue. The defendant's dray was loaded with ten large bales of paper, each bale weighing close to 1,000 pounds. As the dray passed by Pizzitola, one of the heavy bales of paper situated on the left side thereof toppled over and fell upon him. He suffered resulting injuries described to be a compound fracture of the left femur, lower left ribs, concussion of the brain and bronchial pneumonia. He was taken to the Charity Hospital and died three days later.

The deceased is survived by his widow, the plaintiff in this case, who brings this suit against the defendant for damages, both heritable and personal, because of the alleged negligent homicide of her husband.

The petition alleges that the accident was caused by the negligent and improper loading of the dray by the defendant's servants and employees.

The defendant answered denying fault and setting forth that the accident was unavoidable. The district judge, after hearing the evidence, found for the plaintiff. Wherefore this appeal.

Counsel for the defendant has furnished us with an elaborate and exhaustive brief which contends, in part, that the doctrine of "res ipsa loquitur" is inapplicable to the case at bar because the plaintiff has made specific allegations of negligence unaccompanied by a general charge of fault.

It is conceded that, under the jurisprudence of Louisiana, as announced in the cases of Frazier v. South New Orleans Light & Traction Co., No. 8608 of the docket of this court (see Louisiana and Southern Digest), and Horrell et al. v. Gulf & Valley Cotton Oil Co., 15 La.App. 603, 131 So. 709, where specific allegations of negligence are made in a case to which the doctrine of "res ipsa loquitur" would ordinarily apply accompanied by a general charge of negligence, the plaintiff, upon failure to prove the specific allegations of fault, is not precluded from relying upon the doctrine, being saved by the general allegation of negligence. However, it is asserted that the decisions above cited are inapplicable here for the reason that the plaintiff has relied solely upon the specific allegations of fault on defendant's part and has failed to make general charges of negligence which bars her from invoking the precept.

The doctrine of "res ipsa loquitur" applies in cases where, by reason of the fact of the happening of the accident, the defendant is in a better position to explain its occurrence than the plaintiff. The jurisprudence of this state is that unproved specific allegations of negligence will be regarded as surplusage, in cases where the doctrine would ordinarily apply.

But it is asserted that unless the petition contains a general charge of negligence, we are without warrant for treating specific allegations of fault as surplusage. However, it is too well settled to require the citation of authority that a general allegation of negligence is merely the pleader's own conclusion of law. If, by reason of the fact of the happening of the accident, the burden is cast upon the defendant to show a freedom from fault, we do not think that the plaintiff's failure to allege a conclusion of law, i. e., a general charge of negligence, would alter the situation.

It is unnecessary to engage in a further discussion of this technicality of pleading, for we find that the plaintiff here has not only alleged specific negligence on the part of defendant, but has abundantly proved it by the evidence.

The testimony shows that for the past five or six years the defendant has been delivering large quantities of paper to the Flintkote Paper Company. The method adopted by it in loading the bales of paper on its drays is as follows: One load consists of ten bales of paper and each bale weighs between 800 and 1,000 pounds. The trucks, or drays, employed by the defendant are large open vehicles. On the sides and rear of the dray and attached thereto are strips of wood, known as wings, extending about eight inches in height from the floor of the dray, and while some of the bales are placed flat on one end on the floor of the dray, others are placed therein on an oblique angle on dunnage boards, which cause the bales to be tilted toward the center of the dray. There are nine bales loaded into the dray in the manner above described, while one bale is located on the portion of the dray situated in the forward part thereof, and described to be a "goose neck." A rope is tied over the two bales situated just behind the "goose neck" and there is also a rope extending over the two bales in the extreme rear. On the date of the accident it is shown that the bale next to the rear bale on the left side toppled over and fell.

Plaintiff produced at the trial five disinterested witnesses, all of whom testified that there was no rope extending over and holding the bales of paper situated in the rear of the truck. Some of plaintiff's witnesses also testified that immediately after the happening of the accident defendant's employee dismounted from the dray and placed a small ⅜-inch rope over the remaining bales of paper.

The testimony of plaintiff's witnesses that the bales of paper in the rear of the dray were not tied with a rope at the time of the accident is partially corroborated by one of the defendant's witnesses, Mr. Pretlove, an

employee of the Flintkote Company. He stated that when defendant's truck delivered the paper to the Flintkote Company after the accident there were only two ropes tied around the bales of paper, whereas Boyd, the driver of the truck, testified that after the accident, in addition to the two ropes which were already tied around the bales of paper, he put on another rope, making three in all.

Defendant's testimony, for the most part, is to the effect that the dray was loaded and tied with ropes in the customary manner above described, but plaintiff's evidence is overwhelming that such was not the case.

The district judge believed plaintiff's witnesses and we see no reason to disagree with his findings.

Moreover, it appears to us that the heavy bales of paper, loaded in the manner as shown by the evidence and subsequently carted over the streets of New Orleans, while not previously the cause of an accident, were manifestly dangerous to the public.

Finding that there is liability in the case, we next consider the question of quantum of damage. The judgment was for $7,012. While the judgment itself does not segregate the amounts awarded by the trial court, we find a notation on the record in the handwriting of the district judge where he allows the following items: $5,000 as personal damages for death, $1,500 for the pain and suffering endured by the deceased and inherited by the plaintiff, and $512 for funeral expenses.

The defendant submits that the compensatory damage is too high and should be reduced to $3,500, and further contends that no allowance should be made for funeral expenses. The plaintiff has answered the appeal praying for an increase in the award.

With reference to the item for funeral expenses, the plaintiff testified that she had paid the funeral bill and we have heretofore held, in the case of Freibert v. Sewerage and Water Board (La.App.) 159 So. 767, that funeral expenses incurred by the widow suing for the death of her husband are recoverable.

With reference to the amount of $6,500 allowed by the district judge for statutory and heritable damages, we are of the opinion that it is neither excessive nor inadequate. While in some cases larger awards have been made, we must take into consideration in the present case that the deceased was seventy-four years of age and that his widow is now seventy-five years old. Hence the widow is not deprived of the companionship and support of her husband to the same extent as a young person with a longer life expectancy.

Being of the opinion that the judgment below is correct, it is, therefore, affirmed.

Affirmed.