## COFFEY v. OUACHITA RIVER LUMBER CO., Inc., et al.

### No. 5950.

Court of Appeal of Louisiana.
Second Circuit.

April 28, 1939.

Rehearing Denied June 28, 1939.

Writ of Certiorari and Review Denied
October 30, 1939.

Gordon Boswell, of New Orleans, and Theus, Grisham, Davis & Leigh, of Monroe, for appellant Insurance Co.

W. B. Clarke, of Monroe, for appellants Ouachita Lumber Co. and Stewart.

Clark & Thompson, of Monroe, for appellee.

TALIAFERRO, Judge.

Plaintiff sustained serious physical injuries when a truck owned by the Ouachita River Lumber Company, Inc., operated by L. L. Stewart, an employee, on which

plaintiff was riding, left the highway and collided with a ditch bank. He sues to recover damages, and impleaded Stewart, the Ouachita River Lumber Company, Inc., hereinafter called the lumber company, and its public liability insurer, American Surety Company of New York.

The lumber company owns and operates a small sawmill in the northern end of Franklin parish and sells and delivers some or all of its output to another lumber company in the City of Monroe, 50 miles distant.

About 7:30 o'clock A. M., June 3, 1938, Stewart left the mill site in a Dodge Truck with trailer attached, enroute to Monroe, on which was loaded 2,885 feet of green pine lumber. He was accompanied by S. G. Edwards, a helper. He consented for Elisha Hill, a negro man, to make the trip with him. The water pump of the truck developed trouble and a stop was made at the town of Mangham to repair it. Plaintiff, who had worked for the lumber company the day before, got aboard the truck at that place with Stewart's consent with the intention to accompany the party to Monroe and return on the truck to the mill. Another negro man, named Emmett Thompson, also boarded the truck at Mangham. This man and Hill sat upon a tool box against the cab of the truck facing the lumber, not over 4 feet away. Plaintiff sat down in front of and faced them. Stewart and Edwards occupied the seat in the cab.

The highway from Mangham to Monroe was then paved save for a short distance on either side of the Boeuf river, approximately 10 miles northwest from Mangham. The trip was uneventful until the truck entered upon the stretch of gravel east of the river. While thereon Stewart lost control of it. It veered to its left side, crossed the road, and after running some distance in the ditch, rammed the left bank and stopped. The impact broke one of the chains which held the lumber on the trailer, allowing a goodly portion of it to fall upon plaintiff who, by some means not made clear, had fallen to the ground.

The accident, plaintiff alleges, was attributable solely to the lack of care and gross negligence of Stewart in these respects: That he drove his truck, heavily laden as it was, on the pavement at approximately 55 miles per hour, and did not reduce this speed as he approached and entered upon the gravel portion of the road, notwithstanding danger from so doing was obvious and was well known to Stewart, who drove over the road daily; that, due to difference in surface levels, when the truck and trailer left the pavement, they badly jarred, and immediately thereafter the truck and trailer began to swerve from one side of the road to the other, and continued to do so for some distance, estimated to have been between 700 and 900 yards without any effort whatever by Stewart to bring them under control; that after zig-zagging down the highway for the said distance, Stewart drove the truck onto the south shoulder of the road, then into and down the ditch until it suddenly stopped as above described. That in driving the truck as aforesaid, Stewart actively violated the provisions of the Highway Traffic Regulatory Act No. 21 of 1932.

The lumber company and Stewart admit the accident, the ownership of the truck by the former and its employment of the latter; that said truck and trailer were covered by the policy of insurance issued to the lumber company by said insurer. The acts of negligence charged to Stewart are specially denied. In contradiction thereof, it is affirmatively pleaded that Stewart was at all times driving the truck at a reasonable rate of speed, and that despite frequent inspections of the truck by a competent mechanic, the front spring thereof broke soon after it was driven from the pavement onto said gravel, which allowed the frame of the truck to drop down on its front axle and impinge certain parts of the steering control mechanism; that this caused the mechanism to lock or "freeze", which effectively prevented control of the car's movements by and through the steering wheel. That said accident, therefore, is attributable solely to a latent defect in the said spring of the truck, which was not, and could not be discovered on inspection, though regularly made, the last one having been made only a few days prior to the accident.

These defendants deny any liability whatever to plaintiff on any account; and, in the alternative, plead his own contributory negligence in bar of recovery by him.

In the alternative, it is also alleged that should they be cast for any amount, that said insurer also be condemned therefor.

The insurance company resists the suit on these grounds, viz.:

1. That the relationship of Stewart with the lumber company at the time of the

accident and at all times prior thereto was that of independent contractor.

2. That the lumber company, at time of the accident,·was not the sole and unconditional owner of the truck involved in the accident, a condition precedent to liability on its part under the policy contract.

3. That said policy expressly excludes from its coverage any employee of the insured, and that on June 3, 1938, plaintiff was in truth and in fact an employee of the insured lumber company. In the alternative, this defendant denies any negligence on part of Stewart as a cause of the accident, but avers that it was entirely due to the breaking of the truck's left front spring. The averments on this score being substantially the same as those set up by the other two defendants. Further, in the alternative, the contributory negligence of plaintiff, in the respects alleged upon by Stewart and the lumber company, is pleaded against his right to recover herein. Finally, in the alternative, this defendant pleads that as $5,000 is the maximum of its liability under the policy of insurance, any judgment against it should not exceed that amount.

There was judgment against all defendants in solido for $5,000, and against Stewart and the lumber company in solido for $4,121.50. The insurance company suspensively appealed. The lumber company and Stewart appealed devolutively.

Appellee prays for enormous increase in the judgment against the two latter appellants.

■ We have reached the conclusion, after mature study of the record, that plaintiff has not established by a fair preponderance of the testimony that this accident was caused by the carelessness and negligence of the truck's operator, Stewart. This being true, other defenses and issues need not be considered or passed on.

Plaintiff and his two companions testified that the truck was traveling on the pavement at a rapid rate and did not slow down before entering upon the gravel road; that they felt a slight jar when the truck left the pavement, due to the gravel's elevation being lower than that of the pavement; that immediately thereafter the truck began to zig-zag over the road, first going to the right side and then to the left and repeating these movements, during which time it had covered between 150

and 200 yards; that following the second swing to the left, the truck and trailer traveled some 200 feet on the shoulder, then veered further to its left and ran violently into the embankment on the opposite side of the ditch.

Emmett Thompson testified that when the truck left the pavement it was traveling at from 35 to 40 miles per hour. Plaintiff testified that at that time it was making between 40 and 50 miles per hour. He alleges in his petition the speed was then approximately 55 miles per hour, and that the truck, after it began to zig-zag, traveled between 700 and 900 yards before stopping in the ditch. He made affidavit to the allegations of fact contained in his petition. Twice after the accident, he made statements, one of which he signed, that the truck's speed was about 25 miles per hour when it "left the road and went into the ditch."

These three negroes were so situated that they could not very well perceive what was going on ahead of or to the sides of the truck. Two of them faced the opposite direction. The cab of the truck was higher than their heads and the stacked lumber was even higher than the cab's top. They admit that they were busily engaged in conversation as the truck journeyed along. It would have been most unusual for them to have taken note of the truck's movements and speed, unless of a highly reckless sort, and this the evidence positively negatives. Their testimony is suspiciously corroborative of each other.

Stewart was well acquainted with the highway. He had driven this very truck and trailer, well loaded, over it daily for months. He is a seasoned operator of trucks, is married and has· six children dependent upon him. He testified that he appreciably reduced his speed before reaching the gravel, as was his practice, and after driving thereon 150 to 200 yards, the left front end of the truck suddenly "let down," the steering mechanism locked or "froze" to such degree that the vehicle's movements could not be controlled by the operator's wheel; that he applied the brakes as quickly as possible but was unable to stop the truck, which had taken a left diagonal course across the road, before it entered the ditch and finally rammed the embankment. He says that when the "let down" was felt, Stewart exclaimed, "What in the Hell's the matter," and by that time the truck was in the ditch; that it had only

traveled 35 or 40 feet before getting in the ditch.

The point of impact is less than 50 yards from the one-way bridge at the river over which the truck had to go. Stewart testified it was necessary to successfully cross this bridge with his load, that he do so at a reduced speed, and that he was slowing down the truck for this purpose. He is corroborated in every substantial detail by Edwards, who certainly has no interest in the outcome of this suit.

The left front wheel of the truck struck the embankment. When the load of lumber was removed, it was found that the main leaf of the front spring was freshly broken and that the frame rested upon the axle and some parts of the steering mechanism. The steering attachments were found to be locked or frozen as alleged by defendants.

It is plaintiff's theory that this leaf of the spring was broken when the truck rammed the ditch bank.

This gravel road at the time of the accident was dry and its surface somewhat rough, as is generally true of such roads during the summertime. The roughness mostly was due to its surface becoming "corduroyed" or corrugated from constant traffic. At its juncture with the pavement, it is slightly lower than the pavement, but not enough to constitute a hazard to traffic.

We are favored with written reasons for the judgment of the trial court, and quote therefrom the following which, in the main, is the predicate upon which the judgment is based, viz.:

"The Court further finds that the testimony of the witnesses, other than Stewart and his helper, shows that the truck and trailer began to swerve from side to side of the road as soon as it left the pavement. This is what one would naturally expect when a heavy truck is driven at this rate of speed off of smooth pavement onto a corduroy graveled road. The Court, therefore, finds that the Defendant, Stewart, was negligent in two respects: First, in the speed at which he operated the truck in entering such a dangerous section of road as he knew this graveled road to be, knowing the size of his truck and the weight of the load; and second, that since the evidence clearly shows that the truck went some distance down the road after it had gone out of control and then traveled some distance parallel to the road after it had left the road, that Stewart was negligent in failing to apply his brakes properly as well as operating the truck at a dangerous speed. The State law fixes no specific speed but requires operators of motor vehicles to operate same at a speed which will be safe, taking into consideration the hazards of the particular portion of the road."

We find ourselves unable to concur in these findings of fact and necessarily not in the legal conclusions drawn therefrom.

The truck's speed was not excessive while on the paved road; and we are not prepared to say that its speed, even according to plaintiff and his witnesses, was excessive after it entered upon the gravel road. We would not expect to see such a vehicle, heavily loaded as it was, perform the antics accredited to it by plaintiff and his witnesses while thus traveling on a hard, corrugated gravel surface. The weight of the load itself would tend to prevent such being done. The greater the weight, the less likely loss of control of the vehicle in such circumstances, and the less vibration from traversing a rough surface.

The brakes of the truck were in good mechanical condition. This was indispensible to safety of travel and operation while carrying heavy loads regularly. The operator was sober. He was seasoned from over twenty years experience in handling trucks. In view of these facts, and others disclosed, it would seem to us absurd to think that this truck would be allowed to zig-zag over this road for nearly the distance of two city blocks, unrestrained and uncontrolled. Surely there was an abundance of time to have applied the brakes to avert certain disaster and surely the driver would not have been so unmindful of his own physical welfare to have left anything undone to bring the truck and trailer under control. To concede that he would not have done so is to convict him of the rankest sort of stupidity, incompetency or indifference. The record certainly does not justify a verdict of guilt on either count.

Plaintiff's theory of the accident is not plausible. It is not supported by reason nor does it square with human experience in the light of the circumstances of the case. On the contrary, defendant's theory thereof is a rational one, and, we believe, must be adopted to account for the accident.

Plaintiff invokes the "res ipsa loquitur" rule. It is not applicable here. Both sides positively allege upon facts which, if true, account for the truck's

movements resulting in the accident. Both contentions are susceptible of establishment by proof. Little may be left to conjecture. Plaintiff does not say that the cause of the truck's antics are unknown to him. On the contrary, he positively avers that he knows why the truck left the road and has attempted to prove his allegations in this respect. The burden was on him to sustain his position by a preponderance of the testimony. He failed to do this.

■ Plaintiff was merely the gratis guest passenger of Stewart. As to the lumber company, his status was in the nature of a trespasser, as it had no knowledge that he was riding on its truck, never authorized same and was under no obligation to allow him to ride thereon. Liggett & Myers Tobacco Co. v. DeParcq, 8 Cir., 66 F.2d 678; Ruiz v. Clancy, 182 La. 935, 162 So. 734; Jefferson et al. v. King, 12 La.App. 249, 124 So. 589.

"Common carriers are not liable for injuries to their passengers resulting from accidents due to latent defects in their machinery." Martin v. Interurban Transportation Co., 15 La.App. 256, 131 So. 514, 515, 517, and authorities therein cited.

■ As to one in Stewart's position, the rule is certainly not any more stringent, even though he, as an employee, be held to any responsibility for vital parts of the truck giving way.

For the reasons herein assigned, the judgments appealed from are hereby annulled, avoided and reversed; plaintiff's demands are rejected and his suit dismissed at his cost.

On Application for Rehearing.

PER CURIAM.

■ The gravamen of this application is a challenge to the correctness, as a legal proposition, of what is said by us concerning the applicability of the doctrine of "res ipsa loquitur", invoked by plaintiff, but only briefly touched upon heretofore, to the facts of the case. Our attention is directed to the following cases, which, it is asserted, are opposed to the reasoning adopted by us in rejecting the rule in the present case, to-wit: Loprestie v. Roy Motors, Inc. et al., 191 La. 239, 247, 185 So. 11; Pizzitola v. Letellier Transfer Co., Inc., La.App., 167 So. 158.

In the Loprestie case, the court, in passing, said [191 La. 239, 185 So. 12]: "Not having alleged any specific act of negligence on the part of the driver of the following car, it is apparent that plaintiffs are relying upon the doctrine of res ipsa loquitur, since it is alleged that the driver of the car behind, in broad daylight, on a straight roadway, and with unobstructed view, had crashed into the rear of plaintiff's car."

The syllabus of the case (No. 4), is much broader than the body of the opinion, in saying: "Where doctrine of res ipsa loquitur applies, unproved specific allegations of negligence will be regarded as surplusage."

In the Pizzitola case, the Orleans Court of Appeal through Judge McCaleb held that, as a general allegation of negligence is merely the pleader's own conclusion of law, such an allegation was not necessary to the disclosure of a cause of action in a suit wherein this doctrine is applicable; and, further, that unproved specific allegations of negligence should be regarded as surplusage. However, it would seem that the Court, in so saying, went farther than was necessary to render a proper judgment in the case, because it finally found and held that [167 So. 159]: "It is unnecessary to engage in a further discussion of this technicality of pleading, for we find that the plaintiff here has not only alleged specific negligence on the part of defendant, but has abundantly proved it by the evidence."

The organ of this court is not convinced that what we had to say on the subject is not a correct exposition of the law applicable to the pleadings in the case and the facts. If this is not the law, then in any case where the doctrine is applicable, an injured plaintiff has two bites at the cherry. He may allege specific acts of negligence against the defendant, causing him injury, and if he fails, after effort, to prove these allegations, then he can fall back on the "res ipsa loquitur" rule, thereby throwing upon defendant the burden of overcoming the prima facie case against him, which is implied from proof of the accident out of which the injury arose.

■ Be this as it may, in the present case we held that plaintiff did not discharge the burden of proving his case, an undertaking he voluntarily assumed. If we delete from consideration the proof he offered in support of his allegations of negligence, leaving him nothing to stand upon but the prima facie case, effectuated by application of the rule, then defendants'

proof in support of their theory of the cause of the accident easily overcomes the prima facie case. This result also accrues if we reinforce plaintiff's evidence in support of his charges of negligence by the res ipsa loquitur rule. The two are insufficient to make out a case in his favor when viewed and weighed in the light of the testimony adduced in opposition thereto, and the cogent inferences arising therefrom.

For these reasons, the application for rehearing is denied.