Plaintiff instituted this suit to recover $250, the amount of damage it claims to have suffered when defendant's automobile ran into five tombstones that plaintiff had on display at his place of business on Centenary Boulevard, in the city of Shreveport, and also for damages to a flood light located on the premises.
For a cause of action plaintiff alleged as follows:
"2. That on the morning of November 3, 1939, at or about 5 A.M., defendant was proceeding down Centenary Boulevard in the city of Shreveport, Louisiana, in a northerly direction toward downtown Shreveport, and reached a point approximately fifty yards north of the intersection of Centenary Boulevard and Stoner Avenue, where the accident hereinafter detailed occurred.
"3. That said defendant, Uhler, was driving a Ford automobile and was proceeding on the right-hand side of said Centenary Boulevard.
"4. Petitioner shows that said defendant negligently and carelessly allowed his car to get out of his control and to run upon the curbing and neutral ground on said right-hand side of Centenary Boulevard, and in so doing, knocked over and demolished certain Cut Stone Memorials that were the property of petitioner.
"5. Petitioner shows that said defendant ran over the curbing almost to the sidewalk on said right-hand side of Centenary Boulevard.
"6. Petitioner shows that said accident was caused solely by the negligence of the defendant, Uhler, in failing to keep his car under proper control.
"7. Petitioner further shows that at the time of the accident, the monuments were clearly visible and were at a point approximately three feet from the curbing on *Page 151 
the right hand side of Centenary Boulevard."
Defendant answered, admitting that he drove his car into the monuments but denied liability; and further answered as follows:
"I. That Centenary Boulevard and/or Market Street at the place where said accident occurred curves to the left at an approximate forty-five degree angle.
"II. That defendant was proceeding north toward town on Centenary Boulevard and/or Market Street.
"III. That there were two automobiles proceeding in a southerly direction on Centenary Boulevard and/or Market Street at an excessive speed and racing with each other; that when defendant reached the point where said street curves to the left, which is opposite plaintiff's place of business, the two cars above referred to, the drivers of which are unknown to your defendant, were some fifteen or twenty feet from the curve, but were attempting to pass each other, one of the cars being well over the center of the road and the other being completely on defendant's side of the road; that in attempting to pass one another at that point, they both swung very wide and well over on defendant's side of the road.
"IV. That defendant, being placed in a situation of peril due to the negligence of the drivers of both automobiles above referred to, and in an endeavor to avert a certain collision with them, was forced to leave the street completely.
"V. That defendant shows that at all times he had his car under proper control, and that the accident referred to in plaintiffs' petition was due to the sole negligence of the drivers of the cars above referred to, in placing defendant in a position of eminent peril."
The lower court, in a well written opinion, had the following to say:
"The first question to be decided in this case is whether the doctrine of res ipsa loquitur is applicable. The defendant contends that by making specific allegations of negligence the plaintiff has demonstrated his knowledge of the accident and that therefore the reason for the rule of res ipsa loquitur is not present in the case. The defendant relies particularly on the statement by the Court in the case of Coffey v. Ouachita River Lumber Company, Inc., La.App., 191 So. 561 [565] wherein the Court said:
"`Plaintiff does not say that the cause of the truck's antics are unknown to him. On the contrary, he positively avers that he knows why the truck left the road and has attempted to prove his allegations in this respect.'
"On application for a rehearing, the Court further said:
"`The organ of this court is not convinced that what we had to say on the subject is not a correct exposition of the law applicable to the pleadings in the case and the facts. If this is not the law, then in any case where the doctrine is applicable, an injured employee has two bites at the cherry. He may allege specific acts of negligence against the defendant, causing him injury, and if he fails, after effort, to prove these allegations, then he can fall back on the "res ipsa loquitur" rule, thereby throwing upon defendant the burden of overcoming the prima facie case against him, which is implied from proof of the accident out of which the injury arose.'
"Considering that the statement above quoted is the law, we do not think that it is applicable to the present case. The mere allegation that defendant permitted his car to get out of control and further, that the accident was due to the negligence of the defendant, does not show knowledge on the part of the plaintiff. The cause of the car getting out of control is not set forth nor is any specific act of negligence alleged in his petition. The allegations as made by the plaintiff would clearly indicate that it was not in possession of all of the facts causing the accident. The allegation that the defendant's car was allowed to get out of control is practically a conclusion from the fact that he ran over the curb and caused this damage.
"In the case of Monkhouse v. Johns, La.App., 142 So. 347, 351, Judge Taliaferro, who was the organ of the court in the Coffey case, supra, after reviewing a number of authorities on the doctrine of res ipsa loquitur, said:
"`Also, we conclude that these authorities sustain the proposition that the application of the rule should not be confined to cases where plaintiff is entirely ignorant of the cause or causes of the accident.' *Page 152 
"This rule, we think, is particularly applicable to the present case.
"The Supreme Court defines this doctrine in the case of Loprestie v. Roy Motors, Inc., 191 La. 239, 185 So. 11 [13], wherein Judge Land was the organ of the Court, said:
"`The doctrine of res ipsa loquitur is based upon the legal proposition that where the defendant is shown to be in a better position to explain the accident than the plaintiff, and where the circumstances of its occurrence indicate that plaintiff cannot be expected to have any information as to the causes of the accident, which is of a kind that does not occur ordinarily when due care has been exercised, "the rule of evidence is that the accident speaks for itself — res ipsa loquitur — that is to say, that a presumption of negligence arises from the fact itself of the accident."'
"We conclude, therefore, that a proper case for the application of this rule of evidence is shown here.
"It therefore becomes necessary to determine whether the defendant has overcome the case of negligence made out against him by the application of this rule.
"The only testimony in explanation of the accident was that given by Mr. Uhler, who testified that he was traveling toward town and that as he was reaching the angle in Centenary Boulevard just north of Stoner, two cars were approaching, one of which was attempting to pass the other at the curve or angle in the street. That to avoid the accident he went over the curb on the right hand side. In doing so he struck five monuments and destroyed one floodlight.
"We frankly were not impressed with the defendant's testimony. The fact that he caused as much damage as was shown in this case indicates that he was no doubt traveling at an excessive rate of speed. The defendant refused to estimate his own speed or that of the approaching cars. Most of his answers were given in an evasive manner. It is significant, we think, that in spite of serious damage to his own car, costing himself $110.00, that he did not stop to investigate the extent of the damage. The testimony of young Clay, the newsboy, was to the effect that he was in Adams Market, only 120 feet north of the scene of the accident; that he ran to the street in time to see defendant's car pass by, at which time he secured the license number. It was necessary for the detectives to investigate and locate the car and owner. The defendant admits denying to attorneys of the B. 
B. Cut Stone Company that he had an accident at this point, claiming at that time that he was involved in an accident on Highway 80 in west Shreveport.
"It is our conclusion therefore that the defendant has failed to overcome the prima facie case of negligence made against him.
"The only remaining question is that of the quantum of damage. Mr. Wayne Bennett, an employee of the plaintiff, estimated the cost of refabricating and reworking the monuments in order to place them in a salable condition. According to his figures, the total cost was $182.52. An error of 22 cents was made on card No. 75 of plaintiff's exhibit P-1, which reduces the total cost to $182.30. In the making of this estimate, Mr. Bennett added a 10% to the cost of repair prior to deducting the salvage value. In explanation of this method, he testified as follows:
"Q. I do not understand that 10%, what is it? A. That 10% that I have in my estimate there. I think this 10% is the usual and customary charge on estimating that monumental work for the various processes; there is a good deal of give and take in the processing of it. I mean by that in order to polish one of those dies, it might take four hours and it might take six.
* * *
"Q. In other words, you have estimated this amount of damage to change the tombstone? A. Yes.
"Q. Then you just threw this 10% in? A. I should think in the processes of reworking these jobs that the company should be compensated for the depreciation, wear and tear upon the machinery to make them in a salable condition."
"This charge should not be allowed. After estimating as accurately as possible it would not be permissible to add 10% to take care of other contingencies. It would be just as proper to deduct 10% from the estimate. Thus, deducting this portion and after correction of the clerical error made by Mr. Bennett, the damage to the monuments is found to be $155.00. *Page 153 
"In his petition plaintiff alleged that the floodlight was damaged to the extent of $20.00. Mr. Neal testified without objection that the damage was $25.00. Defense counsel did object to the enlarging of the pleadings if the witness was to give a portion of his testimony in narrative form with reference to the accident, which was sustained and the objection and ruling made general. Later, this witness was recalled to the stand and interrogated with reference to the damage to the floodlight. At this time he testified without objection that the damage was $25.00. To that extent the pleading was enlarged.
"There should be judgment herein in favor of the plaintiff and against the defendant, G.N. Uhler, in the sum of $180.50, with legal interest from judicial demand, and all costs of this suit."
We are in full accord with the finding of the lower court and the judgment is therefore affirmed, with costs.