This is a suit for damages brought against the owner of leased premises by the wife of the tenant who sustained physical injuries and by her husband, the tenant, who claimed that he expended certain sums for medical services and medicines required by his said injured wife.
The defendant denied liability, and, by reconventional demand, claimed of Kindrey Smith, the tenant, $30.75 for arrears in rent.
There was judgment for the injured woman for $1500 but the claim of the husband was dismissed. The reconventional demand was not mentioned in the judgment.
When the matter came before us, we concluded that the claim was supported by rather unsatisfactory evidence and remanded the matter for a new trial in order that certain so-called new evidence might be introduced. See 6 So.2d 368. This new trial was had, and again there was judgment for plaintiff, Beulah Smith, in the sum of $1500, with interest, etc., and again the claim of Kindrey Smith was dismissed. In this judgment, however, the *Page 648 
reconventional demand of defendant was recognized in the sum of $30.75.
Again defendant has appealed and plaintiff, Beulah Smith, has answered the appeal praying that the amount of the award be increased to $2500.
Kindrey Smith has not appealed from that judgment insofar as it dismisses his claim, nor insofar as it grants plaintiff in reconvention a judgment against him in the sum of $30.75. Therefore, the judgment is final as against him.
The case is fully stated in our original opinion where all of the questions of law which were originally raised were discussed and disposed of, and there are now before us only questions of fact, i.e., was there any such accident as is alleged by plaintiff, was she injured in such an accident, and if so, what was the extent of her injury?
In his reasons for judgment, the district judge states that he personally visited the premises in which the accident is alleged to have taken place.
Among the various contentions of defendant, it was asserted that the plaintiff could not have been so seriously injured as she claimed to be, and witnesses testify that they had seen her in the rear of the house, apparently in good physical condition, during the period in which she claimed that she was totally disabled.
There was a suggestion in rebuttal of this testimony that because of the physical structure of the house, the fences and the alley, these witnesses could not have seen what they testified to. In view then of the statement of the district judge that he, himself, visited the premises, we assume that he must have convinced himself that these witnesses could not have seen what they claim they saw.
Then too, one of our reasons for remanding the matter when it was first before us was our belief that possibly the testimony of a "new witness", who had not testified in the first trial, might seriously affect the credibility of one of plaintiffs' witnesses. However, this new witness, instead of impeaching the other witness, gave evidence which in no way affected her credibility. It appears clearly that the belief of one of the attorneys for defendant that this new witness would impeach the other witness resulted from a misunderstanding, and it is clear, too, that neither this witness, nor the attorney referred to, is deserving of any sensure or criticism whatever.
In view of the finding of the trial judge on the questions of fact, and of the further fact that the evidence given on the new trial rather strengthens plaintiffs' case than weakens it, we have reached the conclusion that obviously the judgment rendered below is not manifestly erroneous, and that the judge of the district court was correct in his finding that there was an accident; that plaintiff, Beulah Smith, was injured, and that the defendant is liable therefor.
How badly then was Beulah Smith injured? She maintains that she suffered a sacro-iliac sprain and a spondylolisthesis. A sacro-iliac sprain is described by one of the physicians as follows: "A sacro-iliac sprain is a term used to describe a certain trauma or injury to ligaments or muscles about a joint, or the joint surfaces, or both."
And he further testified that the particular joint involved is in the area of the sacrum and the ilium, which is in the back of the body at the lower part of the spinal column. The same physician testified that: "Spondylolisthesis is a term used to describe the displacement of one vertebra over another one, and the top or the upper vertebra usually overrides the lower, and it usually occurs on the fourth of fifth lumbar vertebra, * * *."
A medical expert was placed on the stand by defendant who, after reviewing the hospital record, testified that he did not think that the plaintiff had suffered from a sacro-iliac sprain, but he admitted that he was of the opinion that there had been some sort of a sprain in that general area.
There is considerable doubt as to whether plaintiff suffered from spondylolisthesis as a result of the accident, but we are convinced from the record that whether the accident caused this condition, or merely brought to light a congenital condition which already existed, Beulah Smith, after the accident, was suffering from such an affliction. The record shows, and it is well known, that a sacro-iliac sprain causes severe pain and practically complete disability, and it also appears from the hospital record that this woman was required to visit the hospital with some regularity for a period of four months, and that when she was finally discharged, her back still remained under "straps".
The district judge saw her and heard all of the witnesses, and was in a better position *Page 649 
than are we to estimate the extent of her suffering and disability.
The judgment appealed from is affirmed at the cost of defendant.
Affirmed.