Mrs. Emilou W. Burke brings this suit against Toye Bros. Yellow Cab Company and Mr. T.J. Normand, to recover damages for physical injuries sustained while a passenger in a Yellow Cab, as the result of a collision between the cab and an Oldsmobile Coupe, owned by defendant Normand, and, at the time of the accident, driven by Rudolph Crawford. She claims $6,311.84 for pain and suffering, loss of salary and medical expenses. Both drivers are charged with negligence in the operation of the colliding vehicles and Crawford, the driver of the Coupe is said to have been in the employ of Normand and on a mission for him at the time of the accident.
Toye Bros. Yellow Cab Company, answered denying all charges of negligence on the part of its driver, Marion J. Ledet, and averring that the accident was due solely to the negligence of Crawford.
Normand denied that Crawford was in his employ or on a mission for him and averred that he had loaned his car to Crawford for his personal use. He further averred that the collision was due entirely to the fault of Ledet, the driver of the cab.
There was judgment below in plaintiff's favor and against each defendant, in solido, in the sum of $4000.00. Both defendants have appealed and plaintiff has answered the appeal asking that the judgment be increased to the amount prayed for.
The accident occurred at 5:30 P.M. on May 30th, 1944, at the intersection of Baronne and Calliope Streets in the City of New Orleans. Baronne is a paved one-way street for traffic proceeding in an uptown direction and Calliope Street is also a paved one-way thoroughfare for traffic moving from the lake toward the river.
The first question to be decided is whether Crawford, the driver of the Coupe belonging to Normand, was in Normand's employ or on a mission for him at the time of the accident. *Page 370 
Normand testified that he is employed by the American Auto Parts Company, located at 1634 Calliope Street and that while Crawford had worked for that company on various occasions, at the time of the accident he was not so employed. Normand says that Crawford came to him on the day of the accident and asked for the loan of his car for a personal errand that he had to attend to; that he permitted Crawford to use the car and that about forty-five minutes later he returned and informed him that the car had stopped at Rampart and Calliope Streets, and asked him if he would help him to get it started; that he went with Crawford, in his truck, to the place where the car had stalled and told Crawford to get in the car and start it as he gave him a push; that he shoved the car about fifteen or twenty feet when it started off; that he followed behind the car at a distance of fifty or sixty feet until the accident occurred; that he, Normand, intended to return to his shop, on Calliope Street, a block from the scene of the accident. There is no evidence, notwithstanding counsel's repeated statement to the contrary, that Normand gave Crawford any instructions to return the car to the shop after he succeeded in getting it started. So far as the record disclosed he might as well be said to have resumed his personal errand after the interruption caused by the failure of the car to start.
Crawford did not testify evidently because he had been inducted into the Armed Forces soon after the date of the accident, or for some other reason. At any rate, he could not be located.
[1] It is contended that whereas the car was originally loaned for use that Normand had regained control and direction of the automobile and, hence, Crawford was acting as his agent when the accident occurred. Normand admittedly assisted in the starting of the car, but there is nothing to show that he actually demanded the return of the car at that time or that he intended that the car be returned to his garage immediately thereafter. Normand, therefore, cannot be held responsible for any acts of negligence on the part of Crawford. Donovan v. Standard Oil Co. of Louisiana, La. App., 197 So. 320; Vol. 5 Blashfield Cyclopedia of Automobile Law and Practice, Perm.Ed., § 2915; Conners v. Houma Packing Company, Inc., 12 La. App. 167, 125 So. 294; Davis v. Shaw, La. App., 142 So. 301; Zuvich v. Ballay et al., La. App., 149 So. 281; Lapeze v. O'Keefe, La. App., 158 So. 36; Monroe v. Heard et al., La. App., 168 So. 519.
The remaining question for determination is the negligence, vel non, of the driver of the cab.
Our appreciation of the evidence is to the effect that the cab was proceeding uptown on Baronne Street, a little to the left of the center of the street at an excessive rate of speed and that, without slowing down, the driver continued on into the intersection of Calliope Street; that just as he entered the intersection he looked to his right and, seeing the approaching coupe, swerved several feet to the left in an attempt to avoid the accident, but as he reached the middle of the intersection, the coupe struck the cab at the center on the right side, damaging both doors and the rear fender.
[2] The speed of the cab was variously estimated at from fifteen to thirty miles per hour without abatement as it entered the intersection. Mrs. Burke and Mrs. Olivia S. Parker, the other passenger in the taxicab, according to their testimony, were alarmed and discussed the subject or protesting the speed of the cab to the taxicab driver just as the accident occurred, but, whatever the speed of the taxicab, whether fifteen or thirty miles per hour, it was too fast under the prevailing conditions. Baronne and Calliope, where the accident happened, is a "blind corner" because of the presence of a building, so situated that it is impossible to see in the direction from which traffic approaches on Calliope Street until the curb line is reached. This circumstance involves additional care on the part of drivers, the speed of whose vehicles should be moderated accordingly. Moreover, it appears that when the accident happened, 5:30 in the afternoon, traffic was very heavy or, as the evidence shows, was at its peak. The plaintiff in this case was a passenger in the taxicab. It is a principle *Page 371 
of law, too familar for citation, that the highest degree of care is required of carriers in the interest of the safety of their passengers.
[3] On the whole we conclude that the driver of the taxicab was negligent and its owner liable in damages.
Mrs. Burke, sixty-three years of age, sustained general contusions of the body, a sprained left ankle and a disc injury of the seventh cervicle vertebrae of the spine. She was taken to the hospital where she remained for seven days. She returned to her home where she was confined to bed for several weeks, being regularly attended by her physician, Dr. Robert A. Robinson, who was also her nephew. Thereafter she made weekly visits to the doctor's office for treatment.
Dr. Robinson, testifying about twenty months after the accident, stated that plaintiff was still suffering from the effects of the accident and suggested that she might obtain relief of the disc injury through surgery, which he described as a major operation.
Dr. Dyer A. Farley, defendant's physician, testified that he saw Mrs. Burke for the first time two weeks prior to the trial and that, in his opinion, she had completely recovered from the effects of the accident and that whatever pain she was experiencing was due to "pronation or inward rolling of the ankles or eversion of the feet", and that an x-ray of the neck was negative.
Mrs. Burke claims $2500.00 for past pain and suffering and $2500.00 for future pain and suffering. Concerning the claim for future pain and suffering we have no way of estimating its extent and no basis for an award.
At the time of the accident Mrs. Burke was employed by Higgins Industries, Inc., as an "interviewer" at a salary of $32.03 per week after certain deductions for social security, withholding tax, etc. She claims to have lost seventeen weeks' salary.
She incurred medical expenses of $465.23.
[4] There is no proof of permanent disability, but we think the plaintiff's injuries were serious and are of the opinion that the amount allowed below is not excessive nor inadequate.
For the reasons assigned the judgment appealed from insofar as it condemns the defendant, T.J. Normand, is annulled, avoided and reversed, and it is now ordered that there be judgment herein in Normand's favor dismissing plaintiff's suit.
In all other respects the judgment appealed from is affirmed.
Reversed in part, affirmed in part.