GLADNEY, Judge ad hoc.
'Three insurance companies, subrogated to the claims of their insured, Earl C. Leoty of Tallulah, Louisiana, have brought this action for damages to property caused by a fire in the Leoty home on November 15, 1948. The fire occurred while the defendants were reconditioning the hardwood floor of the living room and their workmen were *305 engaged in spreading a hydrocarbon thinner known as Varsol. The application was made by means of soaking a cloth in a bucket of the fluid and applying the cloth to the floor surface. The floor was treated to the edges of a floor furnace situated in an opening between the living room and a connecting room. The available evidence indicates the origin of the fire was at or in the proximity of the floor furnace.
The plaintiffs charge the defendants with negligence in failing to extinguish the flame of the pilot light within the furnace while using Varsol, which they classify as dangerously inflammable. In the alternative, the doctrine of res ipsa loquitur is invoked.
The action was defended on the theory that the floor furnace was defective and presumptively caused the fire after every •reasonable and necessary safeguard was taken to avoid any dangerous consequence which might arise from the thinner.
The judge a quo rendered judgment in favor of New York Underwriters Insurance Company and Virginia Fire and Marine Insurance Company, awarding each the sum of $240.69, and in favor of the North River Insurance Company for $75. From this decision the defendants 'have appealed, and North River Insurance Company, in an answer to the appeal, asks that its award be increased to $141.50.
To show negligence in defendants it is incumbent upon its proponents to show first, that at the time of the fire the flame of the pilot light was ¡burning; second, the thinner Varsol was of such an inflammable nature as to require as a precaution against hazard of fire the extinction of the pilot light; and third, that the fire resulted from the thinner or its fumes becoming ignited by contact with the pilot light.
Mrs. Leoty testified that when she left the house if or work on the morning of the day the fire occurred, the pilot light was burning, and Richard Marshall, one of the workmen, said that prior to the application of the Varsol, Benny Prewitt turned the thermostat down but neither turned off the pilot light nor the gas at the main gas line. Several witnesses testified upon the inflammatory properties of the thinner, some holding it to be of a higher degree of danger than others. Mr. B. H. Prewitt testified that he cautioned his workmen to raise all the windows, turn off the heat, and to light no cigarettes while this work was in progress. The fire, which came on suddenly, rapidly spread across the treated floor to consume curtains and wallpaper. These facts are not disputed and we may well assume that plaintiffs have produced sufficient evidence to sustain the first two requirements listed above.
Evidence that the Varsol, either as a liquid or its fumes, became ignited from the pilot light is not so conclusive, because location beneath the surface of the floor and the encasement of the pilot light attachment makes contact with its flame •by liquids or gases coming from above difficult though not impossible. The pilot light was shown to be located at least eighteen inches below the floor level and was so ’ covered or encased that it was only visible from beneath. The likelihood of it contacting gases or fumes from above is remote, and apparently the vapors or fumes given off by the Varsol were of a lighter specific gravity than that of the air present. Only by the liquid streaming through the grate and below to come into contact with heat from the pilot -light is presented a reasonable theory of causation. Although there seems to ibe no dispute as to the fire starting at or near the floor furnace, we are left in some doubt that a flame from the furnace was the cause of the damaging blaze. While it was proved that the ¡bucket o¡f Var'sol became ignited and was removed from the house, location of the bucket when it became ignited is in dispute. Benny Prewitt stated it was some ten or twelve feet away from the furnace, but Mrs. Leoty testified that the ring or imprint of the bucket showed on the charred floor within a foot of the furnace. The judge who heard the witnesses stated that he found, as far as the testimony is concerned, no choice between the witnesses and no conclusive showing to account for the fire. In this opinion we concur and must say plaintiffs have not sustained their burden of showing the proximate cause of *306 the fire was failure to extinguish the pilot light before doing the floor work.
Nor do we find persuasive evidence the origin of the fire was due to a defective floor furnace as contended by defendants. In appellants’ brief it is stated the cause of the fire was not known, but it must be presumed the floor furnace was defective and caused the fire. Evidence preponderated that a new ‘furnace was installed and adjusted about October 8, 1948, and the only work done on it since consisted of cleaning the controls in the fall of 1949 and 1950. No direct testimony of defect in the furnace was produced upon the trial. There was, therefore, no proof of a defect in the furnace that could have brought on the fire.
The record shows a stipulation between counsel that the only person in the Leoty house at the time of the fire, other than defendants or their employees, was Mrs. Alice Meadows, mother of Mrs. Leoty, who was in a room far removed from the origin of the fire. It is therefore true that defendants or their employees were in a better position to possess knowledge of what actually did cause the blaze. Their superior knowledge of causation is thus presumed and the law imposes certain responsibilities to be found in a statement of the doctrine of res ipsa loquitur, invoked herein by plaintiffs, the general application of which is clearly set out in our opinion in Mercer et ux. v. Tremont & Gulf Railway Company, La.App., 19 So.2d 270, 273, as follows:
“The doctrine of res ipsa loquitur is the doctrine invoked in aid of a plaintiff in instances where the occurrence of the accident itself serves to make out a prima facie case o'f negligence on the part of a defendant. When the circumstances surrounding the accident indicate that such accident would not ordinarily occur without some particular act of omission or commission on the part of a defendant, the mere fact that the accident took place is sufficient to create a presumption of negligence. The theory of the doctrine is intended to protect the rights of an injured person under circumstances surrounding the happening of an accident which leave the cause thereof unknown to the injured party. The law then presumes the superior knowledge on the part of the owner, possessor or operator o.f the instrumentality causing the injury. Jones v. Shell Petroleum Corp., 185 La. 1067, 171 So. 447; Loprestie v. Roy Motors, Inc., 191 La. 239, 185 So. 11; Pizzitola v. Letellier Transfer Co., La.App., 167 So. 158; Rome v. London & Lancashire Indemnity Co. of America, La.App., 169 So. 132; Gershner v. Gulf Refining Co., La.App., 171 So. 399.
“It is true that the doctrine of res ipsa loquitur is not proof and does not supply a want of proof, but, nonetheless, the application of this rule of evidence creates a presumption of negligence on the part of defendant, which presumption must be rebutted by the defendant in order to relieve him from liability flowing from presumptive negligence. Smith v. United States, 5 Cir., 96 F.2d 976; Asprodites v. Standard Fruit & Steamship Co., 5 Cir., 108 F.2d 728; Daroca v. Metropolitan Life Ins. Co., 5 Cir., 121 F.2d 917.”
 The record negatives any act of negligence or knowledge of the origin o£ the fire on the part of the Leotys’ and defendants entirely failed to show defect in the floor furnace. The evidence, in our opinion, leaves the cause of the fire unknown. We may indulge ourselves in several inferences, but even so, a completely satisfactory answer as to causation is not forthcoming. It may have started from the pilot light. If so, certainly had defendants extinguished the light, the fire would not have taken place. Defendants’ employees were cautioned against the use of cigarettes, which of course included the use of matches. Disregard of the instruction could have produced the cause. Despite conflicting evidence, the inflammable liquid Varsol may have entered the floor furnace either from an overturned bucket or from excessive quantities being applied on the floor. Each of the foregoing potentialities under the res ipsa loquitur doctrine require the defendants to rebut the inferences arising therefrom. We hold that they have failed to clear- themselves of responsibility and must be held liable for' the fire damages.
*307 The remaining issue is raised by the answer to the appeal wherein North River Insurance Company asked that its judgment be increased from $75.00 to $141.50. This insurer paid out by way of adjustment $141.50 under its policy covering the household and personal effects inclusive of window valances, curtains for the doors and windows, curtain rods, pictures and picture frames, a handmade walnut whatnot, a gold framed mirror and two Dresden china wall vases. After investigation, an adjuster if or the insurance company made the payment aforesaid. Certain witnesses for defendants expressed their opinion various items were overvalued, but they were not familiar with the quality of the things destroyed. The judge a quo gave no reasons for finding Mrs. Leoty’s estimate too high. We think adequate proof of loss was made in the sum of $141.50, and to this extent the judgment should be amended.
The judgment appealed from is amended by increasing the award in favor of North River Insurance Company from $75 to $141.50, and, as amended, the judgment is affirmed at appellants’ costs.
KENNON, J., not participating.