94 So.2d 74 (1957)
Lamar C. HARRIS
v.
Jesse P. VARNADO and Gerald Dykes.
No. 4392.
Court of Appeal of Louisiana, First Circuit.
March 25, 1957.
*75 Talley & Anthony, Bogalusa, for appellant.
Welton O. Seal, Bogalusa, for appellees.
ELLIS, Judge.
Plaintiff has appealed from a judgment dismissing his suit in which he sought damages for personal injuries, loss of wages and current medical expenses as a result of an accident which occurred on September 16, 1954 when he was riding as a passenger in a pick up truck belonging to the defendant Varnado and being driven by his agent, the defendant Dykes.
On the day of the accident Dykes was driving a pick up truck with an enclosed body which had been added behind the cab. Apparently the purpose of enclosing the rear of the pick up truck was to utilize this space to carry passengers. At this point, however, it might be well to state that the evidence fails to show that the truck hauled paying passengers or that the plaintiff was anything other than an ordinary guest passenger. Therefore, as held by the lower court, the defendant Dykes was not the insurer of the plaintiff's safety nor was he bound to exercise extraordinary care to operate the truck as an expert would have done. The only duty devolved on him toward the plaintiff as a gratuitous passenger was to use ordinary care in the operation of the truck so as not to injure him. Lorance v. Smith, 173 La. 883, 138 So. 871; Monroe v. D'Aunoy, La. App., 143 So. 716.
Also a passenger in the truck at the time was one Red Mizell, who was riding in the front seat with the driver. At the time of the accident the plaintiff was riding in the rear of the pick up truck, lying on an inner spring mattress. The day was rainy and windy and the black top was slippery. The plaintiff testified that the truck started swerving and skidding on the highway from one side of the road to the other and then turned over. The driver Dykes testified that on the date of the accident when they left Bogalusa, Louisiana, on their way to Sun, La., the plaintiff rode in front with him; that when they got to the latter place where he picked up his other passenger, Mizell, the plaintiff then got in the covered back portion of the pick up truck. On this particular morning Mizell was late and, therefore, these employees were going to be late for their work at Higgins. After they left Sun, Louisiana, Dykes stated that about 100 yards after he had come out of a small curve he was "driving about 35 miles per hour, the wind was blowing and the wind hit the body and got it to whipping and I lost control," and "I skidded on the slippery highway." The truck turned over on its side.
Under the above facts it is contended that the doctrine of res ipsa loquitur does not apply because plaintiff has alleged specific acts of negligence which he must prove. The negligence alleged by plaintiff is set forth in his petition as follows:
"Petitioner shows that defendant's agent, Gerald, Dykes, was operating the Ford truck negligently in the following, but not exclusive manner:
"1. Driving said truck in a dangerous and reckless fashion at an excessive rate of speed without regard to the safety of others.
"2. Failing to keep said truck under proper control on the highway, which was slippery due to the wet and rainey conditions.
"3. Failing to keep a proper and careful lookout."
The defendants appeared in proper person for the trial of the case but employed counsel for the purpose of filing a brief in the lower court as well as in this court. Counsel relies upon B & B Cut Stone Co. v. Uhler, La.App., 1 So.2d 149, 151, and Coffey *76 v. Ouachita River Lumber Co., La.App., 191 So. 561.
The Coffey case would not be controlling in the case at bar for the reason given in the Uhler case as well as the reasons stated in the recent case, also from the Second Circuit, of Hamiter v. Duncan, Jr., La.App., 78 So.2d 80, 82. In the Uhler case the court said:
"`Considering that the statement above quoted is the law, we do not think that it is applicable to the present case. The mere allegation that defendant permitted his car to get out of control and further, that the accident was due to the negligence of the defendant, does not show knowledge on the part of the plaintiff. The cause of the car getting out of control is not set forth nor is any specific act of negligence alleged in his petition. The allegations as made by the plaintiff would clearly indicate that it was not in possession of all of the facts causing the accident. The allegation that the defendant's car was allowed to get out of control is practically a conclusion from the fact that he ran over the curb and caused this damage.'"
In the Duncan case the defendant had parked his car at the curb of Louisiana Street in Shreveport and a short time later plaintiff parked her car on Fannin Street, almost immediately at its intersection with Louisiana Avenue. Later in the day plaintiff found that her automobile had been damaged by the defendant's vehicle which had crossed over the sidewalk and crashed into the side of her car. Neither party was present at the time of the collision and neither had knowledge of the exact facts involved. Counsel for defendant resisted the application of the doctrine of res ipsa loquitur as plaintiff in her petition alleged specific acts of negligence on the part of defendant without pleading any reliance upon the doctrine. In considering defendant's contention, the court said:
"As has been many times iterated by the courts of this state the doctrine of res ipsa loquitur is a rule of evidence. We have been somewhat concerned in connection with the matter before us as to whether there are any specific requirements of pleading which are necessary as conditions precedent to the applicability and enforcement of the rule, but have come to the conclusion that specific pleading of the doctrine is not required in cases where the facts themselves invoke its application. We find the pronouncement that the doctrine is a rule of evidence rather than a rule of pleading in 65 C.J.S., Negligence, § 220(3) pp. 993, 994. In our own jurisprudence we find the following plain pronouncement in the opinion of Mr. Justice Hamiter of the Supreme Court in Gerald v. Standard Oil Co. of Louisiana, 204 La. 690, 16 So.2d 233, 236.
"`(Res ipsa loquitur) is not a rule of pleading or of substantive law; rather, it is a rule of evidence, the applicability of which is to be determined on the conclusion of the trial.'
"This case offers, as we believe, a perfect exemplification of the principle above enunciated. The conclusions were susceptible of formulation only after the trial of the case which demonstrated (1) that neither party was chargeable with actual knowledge as to the cause or causes of the accident and (2) that defendant's automobile was the offending instrumentality."
This court in the case of Weddle v. Phelan, La.App., 177 So. 407, held that where plaintiff made general allegations of negligence against the defendants as well as specific allegations of negligence based on information and belief, the doctrine of res ipsa loquitur applies, citing 9 Blashfield's Cyclopedia of Automobile Law and Practice, pp. 244, 245, § 5983; Horrell v. Gulf & Valley Cotton Oil Co., Inc., 15 *77 La.App. 603, at pages 610 and 611, 131 So. 709.
In the case of Hebert v. General Accident Fire & Life Assurance Corporation, La. App., 48 So.2d 107, 109, in considering the application of the doctrine of res ipsa loquitur the court stated:
"Nor can it be denied that if a person, who is a passenger in a car, is hurt because the car leaves its proper place on the road and crashes into a ditch or an embankment alongside the road and the passenger can show that he was asleep, or was reading, or for some other proper reason was not aware of what was going on and knew nothing and could know nothing about the cause, then there is placed on the driver the duty of producing evidence which will show that he was not at fault."
The doctrine of res ipsa loquitur was also successfully invoked in the following suits by injured passengers (or their survivors) against the driver (or his liability insurer) of a car which left the road for unexplained causes: Bourg v. Aetna Casualty & Surety Co., La.App. 1 Cir., 77 So.2d 131; Fetterly v. McNeely, La.App. 1 Cir., 77 So.2d 757; Pearce v. United States F. & G. Co., La.App., 8 So.2d 743; Harrelson v. McCook, La.App., 198 So. 532; Galbraith v. Dreyfus, La.App., 162 So. 246; Gomer v. Anding, La.App. 1 Cir., 146 So. 704, 705; Monkhouse v. Johns, La. App., 142 So. 347; Livaudais v. Black, 13 La.App. 345, 127 So. 129; and Hamburger v. Katz, 10 La.App. 215, 120 So. 391.
An examination of Article 3, supra, of plaintiff's petition will show that the negligence charged is general in its nature and are legal conclusions as a result of the truck suddenly swerving and skidding and turning over on the highway. In any event, the doctrine of res ipsa loquitur is a rule of evidence rather than pleading, and under the facts of the present case it is applicable as ordinarily a truck being driven in a careful and prudent manner does not turn over in the middle of the highway for no apparent reason, and it was under the exclusive control of the defendant driver Dykes and at the time of the collision the plaintiff was lying down on an inner spring mattress in the rear portion of the pick up truck.
Having decided that the doctrine does apply it is necessary that we examine the testimony to determine whether the defendant driver has satisfactorily refuted the presumption of prima facie negligence. The passenger Mizell was in California and neither party was able to obtain his testimony personally or by deposition. The defendant driver's explanation of the cause of the accident has been previously quoted, to the effect that his speed was 35 miles per hour and that the wind was blowing which caused the truck to start swerving from one side to the other of this black top highway and he lost control, skidded and turned over. Under cross examination Dykes stated that he was not familiar with the brakes on the truck as he had only driven it the evening before the accident. He did not apply the brakes as he thought that would cause the truck "to skid more." The defendant has offered no other evidence as to the force of the wind or gust of wind that started his truck to swerving. According to the record it was just a windy day and the driver being well aware of this fact should have been proceeding at a speed and in a manner commensurate with the danger. There is some doubt cast upon the estimated speed of the truck by the defendant driver. In the testimony of Rufus Jones, who was called as a witness on behalf of the defendant, he stated that on the morning of the accident he saw the truck on the other side of Bush, Louisiana, going south, and "they were driving at a very slow rate of speed and the fellow that rode with me in my car commented on how slow he was driving on that particular morning. Usually they drove faster than they were driving at that time." On cross examination when asked how fast the truck was going, when he *78 passed it, this witness said: "I imagine about 50 or 55 or 60, somewhere along there." He also stated that the highway was very slippery and one had to be careful going around the curves and, in addition, that the wind was blowing pretty hard that day.
It was also admitted that these workmen were late that morning. We are well aware of the fact that the District Court has accepted the rate of speed at 35 miles per hour and held that it was not excessive under the circumstances, and he was of the opinion that the plaintiff had failed to prove "the specific acts of negligence alleged on the part of Dykes which plaintiff contends constituted the proximate cause of the accident." The able District Judge then went on to state in his reasons that if the doctrine of res ipsa loquitur was applicable, it was incumbent upon the defendant driver to make sufficient explanation to exculpate himself from the legal inference or presumption of negligence arising therefrom, and although he had considerable doubt that the doctrine was applicable, he still felt that the defendant Dykes "has satisfactorily explained that he used ordinary care in the operation of the truck and the accident did not occur as the result of any negligence on his part. The testimony shows that the truck was enclosed and covered and there were two windows on each side thereof, and it was Dykes' explanation that the wind hit the body of the truck causing it to sway and turn over. Most assuredly it is plausible that a gust of wind suddenly striking the body of the truck, which was apparently top-heavy, could have started it to skidding on the blacktopped highway, and if this is what happened, which it is reasonable to believe, then it was not any negligence on the part of Dykes which caused this unfortunate accident."
It must be remembered that the burden of freeing himself from negligence rested on the defendant and under the facts it was raining, the road was slippery and the wind was blowing, all to his knowledge for the entire trip from Bogalusa to a point south of Sun, La., where he admittedly lost control of the truck and it turned over. There was no sudden force of wind that struck the truck. Apparently from the record it was of the same intensity and force all the way from Bogalusa, and even if he were traveling 35 miles per hour, which we doubt considering all the facts in the case, it evidently was excessive under the facts and circumstances.
Dykes, the defendant driver when called as a witness on his own behalf, was questioned by the court as follows:
"The Court: I believe you testified the truck turned over as you went out of the curve, is that right?
"The Witness: Yes, sir.
"Q. How far from the curve? A. I would say approximately 50 yards.
"Q. You had negotiated the curve and were 50 yards beyond?
"The witness: Yes, sir."
The defendants have not eliminated the probability that due to the conditions of the road and weather that Dykes was going around this curve too fast, and his testimony as given in answer to questions by the court could mean that as he came out of the curve the truck started swerving and turned over approximately 150 feet from this point. His estimate of the distance previously given under cross examination in the beginning of the trial was 100 yards.
Defendant has failed to bear the burden of proof imposed upon him and is, therefore, liable to the plaintiff, which brings us to the question of quantum.
As to quantum, it is not inappropriate to state that the state of the record is most deficient. However, the evidence indisputably shows that plaintiff suffered a compression fracture of the 12th dorsal vertebrae and a fracture of the left foot, and that he was hospitalized for 19 days. He complained of pain in his foot immediately after the accident.
*79 Plaintiff is a man of 54 years of age who had been complaining of back pain for some time before the accident, due to an arthritic condition therein. While at the time of trial he had not returned to his regular job at Higgins, the evidence shows that this was because of a layoff, rather than plaintiff's disability. At the time of trial, plaintiff was employed at filing saws with W. W. Fornea, a job he had held before his employment with Higgins at a wage of $105 per week. His salary at Higgins was $88 per week, and the most loss of earnings proved by plaintiff was for 19 days. While his doctor stated plaintiff was only employable at light labor, he specifically did not state that this was due to the trauma rather than the arthritic condition due to plaintiff's age.
In the necessarily arbitrary task of assessing a monetary value to personal injuries, we think the evidence of the fractures, relatively slight pain, and slight loss of special earnings would be adequately compensated for by an award of $3,000, in the light of the following cases: Attaya v. Zimmerle, La.App. 1 Cir., 83 So.2d 676; Hawkins v. Fidelity & Cas. Co., La.App. 1 Cir., 74 So.2d 323; Lewis v. American Brewing Co., La.App. Orl., 32 So.2d 109; Burke v. Toye Bros. Yellow Cab Co., La. App. Orl., 28 So.2d 369; Smith v. Hyman, La.App. Orl., 10 So.2d 647.
The doctor stated that there was a medical bill owing, but neither he nor plaintiff proved the amount. As to this aspect of the claim, since this item of damages was definitely proved to exist although not in the specific amount, we believe the ends of justice will be served by remanding the cause, restricted to the purpose of proving the exact amount, but not to exceed the amount of $669.16 demanded by the prayer of plaintiff's petition. Lavergne v. Indemnity Ins. Co., La.App., 84 So.2d 617.For the above and foregoing reasons, the judgment of the District Court is reversed, and judgment is rendered against defendants Jesse P. Varnado and Gerald Dykes, holding them liable in the full and true sum of $3,000 together with legal interest thereupon from date of judicial demand until paid. This cause is further remanded for the restricted purpose of establishing the cost of hospitalization and treatment by Dr. W. S. Harrell, in an amount not to exceed in all $669.16; and to enter judgment in plaintiff's favor in the amount so established, together with legal interest thereupon, holding both defendants liable therefor in solido. All costs of these proceedings are assessed against defendants.
Reversed; remanded in part.